THE STATE EX REL. CHOICES FOR SOUTH–WESTERN
CITY SCHOOLS ET AL. *v.* ANTHONY JR. ET AL.

[Cite as *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362.]

(No. 2005–1725—Submitted September 30, 2005—Decided October 10, 2005.)

---

**Per Curiam.**

{¶ 1} This is an expedited election case in which relators seek either a writ of mandamus or a writ of prohibition to compel a board of elections and its members to submit a purported levy-decrease question to the electorate at the November 8, 2005 general election.

{¶ 2} The South–Western City School District is located in the southwestern quadrant of Franklin County, Ohio. It is the sixth largest school district in Ohio, with approximately 21,000 students enrolled in 34 schools within the district.

{¶ 3} In August 1994, district voters approved an operating levy of 8.9 mills, which the school district had projected would fund district operations until 1998. By careful management, the South–Western City School District Board of Education stretched the 1994 levy beyond the projected date, even though the district grew by nine schools and over 3,200 students during that period.

{¶ 4} Before 2004, the school board determined that the 1994 levy would be insufficient to cover all operating expenses for fiscal year 2006 and attempted to pass new tax levies in November 2004 and February 2005. Both levies were defeated.

{¶ 5} In February 2005, faced with the prospect of a budget deficit for the district, the school district's board of education filed a resolution with the Franklin County Board of Elections to submit to district electors a proposed tax levy of 9.7 mills for the May 3, 2005 primary election ballot pursuant to R.C. 5705.217. The board of elections certified the issue to the May 3, 2005 election ballot as Issue No. 31, which contained the following language:

"# 31  PROPOSED TAX LEVY

"SOUTH–WESTERN CITY SCHOOL DISTRICT

{¶ 6} "An additional tax for the benefit of the South–Western City School District for the purpose of CURRENT OPERATING EXPENSES at a rate of

7.7 mills and THE ACQUISITION, CONSTRUCTION, ENLARGEMENT, RENOVATION AND FINANCING OF PERMANENT IMPROVEMENTS, at a rate of 2 mills to constitute a tax at a rate not exceeding 9.7 mills for each one dollar of valuation, which amounts to $0.97 for each one hundred dollars of valuation, for a continuing period of time, commencing in 2005, first due in calendar year 2006." (Emphasis sic and boldface deleted.)

{¶ 7} On May 3, 2005, school district electors voted to approve the levy by a margin of 18,049 to 16,302. The levy was the only levy for the direct benefit of the South–Western City School District on the May 3, 2005 election ballot.

{¶ 8} Relator Choices for South–Western City Schools is a political action committee that sponsored a petition proposing a "decrease" of the voter-approved levy. Relators Kathy Larzelere, Larry Mitchell, and Fred Van Order are school district taxpayers and electors who signed the petition. Relators Larzelere, Mitchell, Van Order, and other persons began circulating part-petitions on May 15, 2005, and continued circulating them as late as August 17, 2005.

{¶ 9} On August 18, 2005, pursuant to R.C. 5705.261, relators submitted the petition to the board of elections. The petition contained 3,732 signatures. The petition proposed the following question, titled "PETITION FOR A LEVY DECREASE BY A SUBDIVISION," for submission to the district electors on the November 8, 2005 election ballot:

{¶ 10} "We the undersigned, being qualified electors residing in the South–Western City School District respectfully petition for an election to be held on the question of decreasing the increased rate of the levy which was approved at the election held on May 3, 2005 (Issue 31), for a continuing period of time for the benefit of the South–Western City School District for the purpose of providing current expenses (7.7 mills) and general ongoing permanent improvements (2.0 mills), such decrease to be from the voted millage of 9.7 mills to 0.00 (Zero) mills, being a reduction of 9.7 mills; said question to be presented at the November 2005 general election; all in accordance with sections 3501.38 and 5705.261 of the Ohio Revised Code."

{¶ 11} On August 30, 2005, the board of elections certified that relators' petition contained sufficient valid signatures. The board certified the question to the November 8, 2005 ballot as Issue No. 79, entitled "PROPOSED DECREASE OF RATE OF TAX LEVIED FOR A CONTINUING PERIOD OF TIME (By Initiative Petition) SOUTH–WESTERN CITY SCHOOL DISTRICT," and pre-pared the following language for the issue:

{¶ 12} "At an election held on May 3, 2005 voters approved a tax levy of 9.7 mills for a continuing period of time for the benefit of the South–Western City School District for the purpose of current expenses (7.7 mills) and general

ongoing permanent improvements (2 mills). A petition filed by electors proposes a decrease in the rate of the tax to 0.0 mills; being a reduction of 9.7 mills.

{¶ 13} "Shall the tax be reduced from 9.7 mills to 0.0 mills?"

{¶ 14} On September 2, 2005, 13 individuals, including the five members of the school board, filed a protest against relators' petition with the board of elections. The protesters claimed that the petition was defective because (1) it exceeded the scope of R.C. 5705.261 and 5705.217 by seeking a repeal of the May 2005 levy instead of a decrease in it, (2) R.C. 5705.261 would be unconstitutional as applied if construed to encompass repeals of voter-approved levies, and (3) the petition's summary of the May 2005 levy was misleading. For their argument concerning what they described as a summary, the protesters claimed that the petition was misleading because (1) relators incorrectly titled the petition as a referendum on a levy decrease even though they actually sought a repeal of the levy, (2) relators loosely summarized the specific improvements in the voter-approved tax levy as "general ongoing permanent improvements," (3) relators stated that 7.7 mills of the voter-approved tax levy would be used for "current expenses" instead of the levy language of "current operating expenses," and (4) relators omitted the approved tax-levy language that the increased millage would amount to "$0.97 for each one hundred dollars of valuation."

{¶ 15} The school board and the protesters had notified the board of elections at its August 30 meeting that they reserved the right to protest the petition. According to the director of the board of elections, it was the board's practice not to conduct hearings on protests challenging issue petitions prior to the board's certification of the issue to the ballot and that even if the protesters had submitted their protest before the August 30 meeting, the board would not have conducted a hearing until September 7.

{¶ 16} On September 7, 2005, the board of elections held a hearing on the protest. At the conclusion of the hearing, the board of elections sustained the protest and removed the issue from the November 8, 2005 election ballot.

{¶ 17} On September 14, relators filed this expedited election case. They request a writ of mandamus or, in the alternative, a writ of prohibition to compel the board of elections to place the question proposed by relators' petition back on the November 8, 2005 election ballot. Respondents filed an answer, and the court granted the motion of the school district board of education and the protesters to intervene as additional respondents. 106 Ohio St.3d 1520, 2005-Ohio-4947, 834 N.E.2d 823. The parties filed evidence and briefs pursuant to the accelerated schedule in S.Ct.Prac.R. X(9). In addition, the Ohio School Boards Association, the Ohio Education Association, and the South–Western Education

Association, Ohio Education Association/National Education Association ("OEA/NEA") submitted amicus curiae briefs in support of respondents.

{¶ 18} This cause is now before the court for a consideration of the merits.

## Laches

{¶ 19} Intervening respondents initially assert that laches bars relators' claims for extraordinary relief. Relators counter that the board of elections erred in not denying the protest based on the protesters' laches in submitting their protest to the board.

{¶ 20} "We have consistently required relators in election cases to act with the utmost diligence." *Blankenship v. Blackwell,* 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 19. If relators do not exercise the required diligence, laches may bar the action for extraordinary relief in an election-related matter. *Campaign to Elect Larry Carver Sheriff v. Campaign to Elect Anthony Stankiewicz Sheriff,* 101 Ohio St.3d 256, 2004-Ohio-812, 804 N.E.2d 419, ¶ 14.

{¶ 21} Intervening respondents claim that relators could have filed their petition much earlier than August 18. But R.C. 5705.261 expressly authorizes electors to request a decrease of an increased rate of a voter-approved levy for a continuing period to file their petition "not less than seventy-five days before the general election in any year requesting that an election be held on such question" and further allows one petition to be filed "during each five-year period following the election at which the voters approved the increased rate for a continuing period of time." Relators fully complied with both time periods by filing their petition on August 18.

{¶ 22} Admittedly, the mere fact that relators complied with the time requirements of R.C. 5705.261 does not prevent a finding of laches. Cf. *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 325, 631 N.E.2d 1048 ("In mandamus actions, courts have discretion to find laches regardless of whether the writ is barred by the statute of limitations"); *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections* (1997), 80 Ohio St.3d 182, 186–187, 685 N.E.2d 507 ("S.Ct.Prac.R. X(9) does not provide or suggest that simply because an election case is filed within ninety days prior to the election, laches is never applicable").

{¶ 23} But the intervening respondents cite no case that holds that petitioners seeking to have an issue placed on the ballot must circulate and file their petitions by a certain date to avoid losing their right to have their proposed question placed on the ballot because of laches. And although the intervening respondents assert that relators "had a sufficient number of signatures to file their Petition by the end of July 2005," they have submitted no evidence to support this assertion. The parties have merely stipulated that on August 18, 2005, the petition contained

3,732 signatures, and the board of elections later determined that the petition had sufficient valid signatures. In fact, the evidence that was submitted by the parties establishes that relators were still circulating part-petitions on August 17, the day before they filed their petition. Even assuming—as the intervening respondents claim—that relators had amassed a sufficient number of signatures by late July, they may have reasonably wanted additional signatures to better assure that they would meet the valid-signature requirement of R.C. 5705.261.

{¶ 24} Under these circumstances, and in the absence of any evidence suggesting any improper purpose by relators, relators did not unreasonably delay the assertion of their rights by filing their petition with the board of elections on August 18.

{¶ 25} Moreover, the seven-day delay for relators to institute this action following the board of elections' September 7 decision upholding the protest to the petition was not so dilatory as to warrant the bar of laches. Cf. *State ex rel. Landis v. Morrow Cty. Bd. of Elections* (2000), 88 Ohio St.3d 187, 189, 724 N.E.2d 775, citing *Paschal v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 141, 142, 656 N.E.2d 1276 ("we have held that a delay as brief as *nine days* can preclude our consideration of the merits of an expedited election case" [emphasis sic]). We have previously emphasized our inclination to "construe R.C. 5705.261 broadly." *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1993), 67 Ohio St.3d 134, 139, 616 N.E.2d 869.

{¶ 26} Therefore, laches does not bar relators' claims for extraordinary relief.

{¶ 27} Nor did the board of elections abuse its discretion by refusing to deny the protest against the petition based on laches. The protesters waited 15 days from the date the petition was filed to submit their protest to the board of elections. The cases cited by relators concerning delay in submitting a protest have generally involved a significantly lengthier delay in which the protesters ultimately became the relators in subsequently filed expedited election cases. See, e.g., *State ex rel. Newell v. Tuscarawas Cty. Bd. of Elections* (2001), 93 Ohio St.3d 592, 757 N.E.2d 1135 (delay of 20 days after petition was filed to submit protest and an additional 14 days after protest was denied to file expedited election case); *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37 (delay of 2 months after petition was filed to submit protest and an additional 17 days after denial of protest to file expedited election case); *State ex rel. Ascani v. Stark Cty. Bd. of Elections* (1998), 83 Ohio St.3d 490, 700 N.E.2d 1234 (delay of ten weeks after petition was filed to submit protest); see, also, *Mason City School Dist. v. Warren Cty. Bd. of Elections*, 107 Ohio St.3d 373, 2005-Ohio-5363, 840 N.E.2d 147 (delay of 90 days after petition was filed to submit protest and an additional 12 days after denial of protest to file expedited election case).

6

{¶ 28} In fact, there is no evidence that any prejudice resulted from the lapse of 15 days before the protesters challenged the petition. The director of the board of elections specified in his affidavit that even if relators had protested the petition before September 2, the board would still not have conducted a hearing on the protest until September 7.[1] Therefore, even if the protest had been submitted on August 18—the same day that the petition was filed—this case would still have been an expedited election case, and the deadline to have absentee ballots printed and ready for use would still have been close to expiring at the time briefing in this case had concluded. See S.Ct.Prac.R. X(9). This is thus a case in which the statutory time limits would have expired even "under the best of circumstances." *State ex rel. Squire v. Taft* (1994), 69 Ohio St.3d 365, 369, 632 N.E.2d 883.

## Mandamus and Prohibition

{¶ 29} Relators request a writ of mandamus or a writ of prohibition to compel the board of elections to place the purported levy-decrease question proposed by relators' petition on the November 8, 2005 election ballot. In order to be entitled to the requested writ of mandamus, relators must establish a clear legal right to have the question placed on the November 8, 2005 election ballot, a corresponding clear legal duty on the part of the board of elections to place the question on the ballot, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Miles v. McSweeney*, 96 Ohio St.3d 352, 2002-Ohio-4455, 775 N.E.2d 468, ¶ 13. To be entitled to the requested writ of prohibition, relators must establish that (1) the board of elections and its members are about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of law. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 26.

{¶ 30} Given the nearness of the November 8 election, relators have established that they lack an adequate remedy in the ordinary course of law. Id.; see, also, *Miles*, 96 Ohio St.3d at ¶ 13, 2002-Ohio-4455, 775 N.E.2d 468.

{¶ 31} The dispositive issue is thus whether relators have proven the remaining requirements for extraordinary relief—a clear legal right to have the so-called levy-decrease question placed on the November 8 ballot and a clear legal duty on the part of the board of elections and its members to place the question on the ballot (mandamus). In the alternative, relators seek a holding that the board's

---

1. The board's practice in this regard is not required by law. Nothing in R.C. 3501.39 prohibits persons from submitting a protest before the board certifies the petition. Similarly, nothing in the pertinent statutes requires the board to delay holding a hearing on the protest until after it determines whether to certify the issue to the ballot.

exercise of quasi-judicial power in granting the protest was unauthorized by law (prohibition).

{¶ 32} Regarding these remaining requirements, " '[i]n extraordinary actions challenging the decision of a board of elections, the applicable standard is whether the board engaged in fraud, corruption, abuse of discretion, or clear disregard of statutes or pertinent law.' " *State ex rel. Stevens v. Geauga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 223, 226, 736 N.E.2d 882, quoting *State ex rel. Valore v. Summit Cty. Bd. of Elections* (1999), 87 Ohio St.3d 144, 145, 718 N.E.2d 415. As relators conceded, there is no fraud or corruption alleged here, so the question is whether the board of elections and its members abused their discretion or clearly disregarded applicable law.

## R.C. 5705.261

{¶ 33} Relators assert that the board of elections abused its discretion and clearly disregarded R.C. 5705.261 by upholding the protest to their petition and removing the levy-decrease question from the November 8, 2005 election ballot. Under R.C. 5705.217(A), if a board of education of a city, local, or exempted village school district declares by resolution that it is necessary to levy an amount in addition to the ten-mill limitation to provide funds for current operating expenses and for permanent improvements, it shall certify a copy of the resolution to the board of elections for placement on the ballot, and if the levy is approved by voters and is for a continuing period of time, "it may be decreased in accordance with section 5705.261 of the Revised Code."

{¶ 34} R.C. 5705.261 governs the procedure for submitting a question of a decrease of a voter-approved levy for a continuing period of time to the electorate by providing:

{¶ 35} "The question of decrease of an increased rate of levy approved for a continuing period of time by the voters of a subdivision may be initiated by the filing of a petition with the board of elections of the proper county not less than seventy-five days before the general election in any year requesting that an election be held on such question. Such petition shall state the amount of the proposed decrease in the rate of levy and shall be signed by qualified electors residing in the subdivision equal in number to at least ten per cent of the total number of votes cast in the subdivision for the office of governor at the most recent general election for that office. Only one such petition may be filed during each five-year period following the election at which the voters approved the increased rate for a continuing period of time.

{¶ 36} "After determination by it that such petition is valid, the board of elections shall submit the question to the electors of the district at the succeeding general election."

{¶ 37} R.C. 5705.261 therefore specifies the following requirements for petitioners requesting the submission of the levy-decrease issue to voters: (1) their petition must propose the "question of decrease of an increased rate of levy approved for a continuing period of time by voters of a subdivision," (2) their petition must be filed with the county board of elections no fewer than 75 days before the general election in any year requesting that an election be held on the question, (3) their petition must state the amount of the proposed decrease in the rate of levy, (4) their petition must be signed by qualified electors numbering at least ten percent of the total number of votes cast in the subdivision for governor at the most recent general election for that office, and (5) only one petition may be filed during each five-year period after the election at which voters approved the increased rate for a continuing period.

{¶ 38} Relators appear to have satisfied the last four requirements of R.C. 5705.261. As discussed previously, they timely filed their petition more than 75 days before the November 8 general election, and the petition was the only one filed within the five-year period after the May 3, 2005 passage of the school levy. The parties stipulated that the petition contained sufficient valid signatures. The petition also states that the amount of the proposed "decrease" in the levy rate is to 0.0 mills from 9.7 mills.

{¶ 39} Therefore, the board of elections was left to determine whether relators' petition properly proposed the "question of decrease of an increased rate of levy approved for a continuing period of time by voters of a subdivision." The board of elections determined that the petition did not, primarily because the petition proposed a repeal of the May 3, 2005 levy rather than a decrease.

{¶ 40} The board's decision was based on its construction of R.C. 5705.261 and 5705.217. In construing statutes, "our paramount concern is the legislative intent in enacting the statute." *State ex rel. Steele v. Morrissey,* 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. To discern this intent, we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage. *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 231, 736 N.E.2d 886; R.C. 1.42.

{¶ 41} Construing the language of R.C. 5705.261 according to the rules of grammar and common usage, "decrease" means "the process of becoming less or the condition resulting from such a process: gradual diminution" and to "decrease" something means "to cause or grow less esp. gradually." Webster's Third New International Dictionary (1993) 588. By contrast, to "repeal" something means "to rescind or revoke * * * from operation or effect." Id. at 1924; see, also, Garner, Black's Law Dictionary (8th Ed.2004) 1325, defining "repeal" as "rescind * * * esp., abrogation of an existing law by legislative act."

{¶ 42} The levy question submitted by relators would not gradually diminish the size of the earlier levy. Instead of merely reducing the May 3 voter-approved levy, the proposed rollback would rescind or revoke the preexisting levy by repealing it altogether. The ordinary definition of "decrease" does not include a complete rescission of the levy. Therefore, relators' construction of R.C. 5705.261 is not consistent with its plain language.

{¶ 43} Relators nevertheless contend that their construction of R.C. 5705.261 is buttressed by the following additional language in R.C. 5705.261 that notes the possibility of ceasing to levy the increased rate:

{¶ 44} "If a majority of the qualified electors voting on the question of a decrease at such election approve the proposed decrease in rate, the result of the election shall be certified immediately after the canvass by the board of elections to the subdivision's taxing authority, which shall thereupon, after the current year, *cease to levy such increased rate or levy such tax at such reduced rate upon the duplicate of the subdivision.*" (Emphasis added.)

{¶ 45} As respondents note, however, use of the phrase "cease to levy such increased rate" does not necessarily encompass a repeal. For example, if relators had submitted a petition proposing a decrease of the May 2005 voter-approved levy of 9.7 mills to 5.5 mills and that proposal were to be approved by the electorate, the taxing authority would then "cease to levy" the increased 9.7–mill rate and begin levying the tax at the reduced rate of 5.5 mills.

{¶ 46} Moreover, R.C. 5705.261 is a general provision that specifies the procedure affecting several different types of levies authorized in other Revised Code provisions. Because these statutes relate to the same subject matter, they must be construed in pari materia and harmonized so as to give full effect to the statutes. See, e.g., *State ex rel. Commt. for Proposed Ordinance to Repeal Ordinance No. 146–02, W. End Blight Designation v. Lakewood,* 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 20. R.C. 5705.217 authorized the school district to seek—through the May 2005 ballot issue—a levy in excess of the ten-mill limitation for current operating expenses and permanent improvements. Under R.C. 5705.217(A), if the approved tax under that provision is for a continuing period of time, "it may be decreased in accordance with section 5705.261 of the Revised Code."

{¶ 47} Other provisions referring to R.C. 5705.261 include levies for capital and operating expenses in community college districts, R.C. 3354.12(A), additional original and incremental school tax levies, R.C. 5705.212(A)(3), educational-service-center levies, R.C. 5705.215(E)(5), and levies in excess of the ten-mill limitation for subdivisions other than school districts, R.C. 5705.19(SS)(5).

{¶ 48} In R.C. 5705.215(E)(5), the General Assembly expressly noted that the county school-financing-district levy submitted by an educational service center

and approved by voters under R.C. 5705.215(A), in conjunction with the reduction in rate of school district taxes approved by electors under R.C. 5705.215(E)(1), could be either decreased or repealed by the electors pursuant to R.C. 5705.261 in conjunction with an increase of the previously decreased school district tax rates:

{¶ 49} "After the levying of a county school financing district tax in conjunction with the reduction of the rate of one or more school district taxes is approved by the electors under this division, *if the rate of the county school financing district tax is decreased pursuant to an election under section 5705.261 of the Revised Code,* the rate of each school district tax that had been reduced shall be increased by the number of mills obtained by multiplying the number of mills of the original reduction by the same percentage that the financing district tax rate is decreased. *If the county school financing district tax is repealed pursuant to an election under section 5705.261 of the Revised Code,* each school district may resume levying the property taxes that had been reduced at the full rate originally approved by electors." (Emphasis added.)

{¶ 50} Similarly, R.C. 5705.19 makes a distinction between a decrease in a tax levy and a termination of the levy:

{¶ 51} "A levy for one of the purposes set forth in division (G), (I), (J), or (U) of this section *may be reduced pursuant to section 5705.261* or 5705.31 of the Revised Code. A levy for one of the purposes set forth in division (G), (I), (J), or (U) of this section *may also be terminated or permanently reduced* by the taxing authority *if it adopts a resolution stating that* the continuance of *the levy is unnecessary and the levy shall be terminated or that the millage is excessive and the levy shall be decreased* by a designated amount." (Emphasis added.)

{¶ 52} Conversely, the enabling statute for the voter-approved levy here—R.C. 5705.217(A)—specifies that the voter-approved school levy can only be "*decreased* in accordance with section 5705.261 of the Revised Code." Unlike R.C. 5705.215(E)(5) and 5705.19, R.C. 5705.217 does not authorize a repeal or termination of the levy in addition to a decrease.

{¶ 53} Therefore, had the General Assembly intended to authorize a repeal or termination of a voter-approved, school district levy in excess of the ten-mill limitation for current operating expenses and permanent improvements, it would have included that language in R.C. 5705.217, as it did for other levies in R.C. 5705.215(E)(5) and 5705.19. Cf., e.g., *State ex rel. Ferguson v. Court of Claims of Ohio, Victims of Crime Div.,* 98 Ohio St.3d 399, 2003-Ohio-1631, 786 N.E.2d 43, ¶ 16 ("If the General Assembly had intended to limit this bar to reparations to convictions, it could have readily done so with appropriate language").

{¶ 54} In fact, the General Assembly has also used the terms "decrease" and "repeal" to mean different things in other tax-levy provisions. See, e.g., R.C. 5739.101(D), permitting the legislative authority of a municipal corporation or

township to "increase or decrease the rate" of the resort-area excise tax levied under that section or to, at any time, "repeal such a tax."

{¶ 55} Based on the foregoing, the levy-repeal question presented by relators' petition exceeded the scope of R.C. 5705.217 and 5705.261. Accordingly, the board of elections neither abused its discretion nor clearly disregarded applicable law by sustaining the protest and removing the question from the November 8, 2005 election ballot. Relators are thus not entitled to an extraordinary writ of mandamus or prohibition to compel the elections board to place the repeal issue on the November 8, 2005 election ballot. By so holding, we need not address the other arguments of respondents and amicus curiae, including the constitutionality of R.C. 5705.261. See *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 34, quoting *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114 (" 'Courts decide constitutional issues only when absolutely necessary' ").

## Conclusion

{¶ 56} Relators have failed to establish their entitlement to either a writ of mandamus or a writ of prohibition to compel the board of elections and its members to place the levy-repeal question prepared by relators on the November 8, 2005 election ballot. The board and its members neither abused their discretion nor clearly disregarded R.C. 5705.217 and 5705.261 by sustaining the protest and removing the issue from the ballot. Accordingly, we deny the writ. By so holding, we need not consider the remaining contentions, including that R.C. 5705.261 is unconstitutional. We also deny the intervening respondents' request for oral argument because the parties' briefs are sufficient to resolve this case. See *State ex rel. Commt. for the Referendum of Ordinance No. 3844–02 v. Norris,* 99 Ohio St.3d 336, 2003-Ohio-3887, 792 N.E.2d 186, fn. 1.

Writ denied.

MOYER, C.J., RESNICK, PFEIFER, O'CONNOR and LANZINGER, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

**O'DONNELL, J., dissenting.**

{¶ 57} I write separately to express the view that the ultimate authority with respect to the funding of public schools rests with the electors of the state. Today's majority, it seems to me, interferes with that authority by suggesting that a vote to decrease the 9.7–mill tax levy approved by the electors in May 2005 to 0.0 mills pursuant to R.C. 5705.261 be removed from the November ballot.

{¶ 58} The apparent issue in this case is whether a reduction of the 9.7–mill levy to 0.0 mills constitutes a decrease or a repeal of that tax levy.

{¶ 59} It occurs to me that a reduction from 9.7 mills to 0.0 mills is a decrease governed by R.C. 5705.261. Since R.C. 5705.217 does not set forth a clear way by which the voters may repeal a voter-approved tax levy for school funding, the only available mechanism to decrease an approved levy to 0.0 is through the statute at issue in this case. Further, if R.C. 5705.261 were read as the board of elections and intervening respondents request, a proposed decrease from 9.7 mills to .000001 mills, instead of to 0.0 mills, would make the statute applicable. The General Assembly could not have intended this absurd result. *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 22 (court will not approve construction of election statutes that would produce an absurd result). In addition, the statute provides that if voters approve a proposed decrease, the taxing authority "shall thereupon, after the current year, cease to levy such increased rate or levy such tax at such reduced rate." R.C. 5705.261. Reading the statute to disallow decreases to 0.0 mills would render meaningless the phrase "cease to levy such increased rate."

{¶ 60} Finally, R.C. 5705.261 further restricts the opponents of a voter-approved tax levy to petition for the reduction of the levy by specifying that only one such petition may be filed during each five-year period following the election during which the voters approved the levy.

{¶ 61} It is not our function to substitute our judgment for the majority of voters in a district or to preclude the voters from making a choice with which we do not agree. For better or for worse, approval or decrease of a tax levy is a matter that the legislature has vested in the wisdom of the voters. In my view, R.C. 5705.261 does not preclude the current proposed reduction to 0.0 mills from being included on the November ballot, and the board of elections abused its discretion by sustaining the protest on that basis.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Langdon & Shafer, L.L.C., and David R. Langdon; Finney, Stagnaro, Saba & Klùsmeier and Christopher P. Finney, for relators.

Ron O'Brien, Franklin County Prosecuting Attorney, and Patrick J. Piccininni, Assistant Prosecuting Attorney, for respondents.

Schottenstein, Zox & Dunn Co., L.P.A., John P. Gilligan, Stephen J. Smith, and John C. McDonald, for intervening respondents.

Richard J. Dickinson and Patrick J. Schmitz, urging denial of a writ for amicus curiae Ohio School Boards Association.

Linda K. Fiely, General Counsel, Ohio Education Association; Kalniz, Iorio & Feldstein Co., L.P.A., and Christine A. Reardon, urging denial of a writ for amici curiae Ohio Education Association and South–Western Education Association, OEA/NEA.