[Cite as *Lucas v. Whyte*, 2021-Ohio-222.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

SANDRA K. LUCAS,

Plaintiff-Appellee,

v.

MARILYN MILLER WHYTE ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 MO 0022**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2018-416

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Gregory Watts, Atty. Matthew Onest, Atty. Wayne Boyer*, Krugliak, Wilkins, Griffiths & Dougherty, 4775 Munson Street, N.W., P.O. Box 36963, Canton, Ohio 44735, for Plaintiff-Appellee and

*Atty. Kyle Bickford, Atty. Erik Schramm, Jr.,* Hanlon, Estadt, McCormick & Schramm Co., 46457 National Road West, St. Clairsville, Ohio 43950, for Defendants-Appellants.

Dated: January 22, 2021

---

**DONOFRIO, J.**

{¶1} Defendants-appellants, George L. Miller, Marilyn Miller Whyte, George Trigg, John D. Miller, Ruth Campbell, Donald Miller, and David Easter, appeal from a Monroe County Common Pleas Court judgment denying their motion for summary judgment and granting the motion for summary judgment in favor of plaintiff-appellee, Sandra Lucas.

{¶2} In 1914, John D. Miller and Sarah Emma Miller owned a 25 acre tract of land situated in Sunsbury Township, Ohio (the property). On August 14, 1914, they conveyed the property by warranty deed to John McCoy (the Miller deed). In the Miller deed, John and Sarah reserved one-half of all the oil and gas and all of the coal underlying the property (the Miller reservation).

{¶3} On March 27, 1940, John died intestate. The Belmont Count Probate Court handled the probate of his estate. On August 15, 1940, the Belmont County Probate Court sent the Monroe County Recorder a certificate of transfer of John's real estate. This certificate indicated that all real estate held by John, including his interest in the Miller reservation, was transferred to the following people: 1/3 to Sarah and 2/15 each to William Miller, George W. Miller, Nancy Ruth Trigg, John M. Miller, and Donald Miller.

{¶4} Appellants are the current heirs to John and Sara, William Miller, George W. Miller, Nancy Ruth Trigg, John M. Miller, and/or Donald Miller.[1] They claim an ownership interest in the Miller reservation.

{¶5} Appellee acquired sole possession to the surface of the property through three separate transactions. The first transaction was by a quit-claim dated August 4, 1966 and recorded on August 12, 1966, where W.M. and Mary Stephens conveyed to appellee and her husband, William Lucas, the surface of the property. The second transaction was by a warranty deed dated November 6, 2009, where appellee and William

---

1 Appellants filed a suggestion of death on April 8, 2020 notifying this court that appellant George L. Miller had died and moved to substitute him with the personal representative of his estate, Alice L. Birney.

Lucas gave each other joint survivorship rights to the property. The third was by an affidavit of transfer dated April 19, 2010, where appellee averred that she was the sole owner of the surface of the property due to William Lucas' death earlier that year.

{¶6} On October 3, 2013, appellee published a notice of intent to declare the Miller reservation abandoned. On November 7, 2013, appellee filed an affidavit of abandonment of the Miller reservation. On December 16, 2013, appellee filed a notice of abandonment of the Miller reservation.

{¶7} On October 12, 2018, appellee filed her complaint seeking to quiet title to the property of any outstanding oil and gas interests. Appellee's complaint alleged that appellants' interest in the Miller reservation was both extinguished under Ohio's Marketable Title Act (MTA) and abandoned under Ohio's Dormant Mineral Act (DMA).

{¶8} Appellee served notice of the complaint on all interest holders by publication except for appellant Marilyn Miller Whyte. Appellee served her notice by certified mail.

{¶9} Appellants filed an answer and affirmative defenses. Among their affirmative defenses, appellants asserted that the MTA conflicted with the DMA and the DMA was the sole method to terminating oil and gas interests, appellee failed to exercise reasonable diligence in serving appellants with the notice of abandonment pursuant to the DMA, and appellee's claims were "barred by the muniments in the chain of title."

{¶10} Both parties filed motions for summary judgment.

{¶11} Appellants' motion argued that appellee's DMA claim failed as a matter of law because appellee did not attempt to serve appellants with the notice of abandonment by certified mail and only served it on appellants by publication. As for appellee's MTA claim, appellants first argued that the DMA directly conflicts with the MTA and the DMA, as the specific statute, controlled the outcome of this action. Alternatively, they argued that the MTA did not extinguish their interest in the Miller reservation because their interest in the Miller reservation was subject to five title transactions and appellee did not have a valid root of title instrument.

{¶12} Along with their motion for summary judgment, appellants submitted two affidavits. The first is the affidavit of Kyle Bickford, appellants' attorney. Bickford's

affidavit contained numerous exhibits that were incorporated into appellants' motion for summary judgment. The second affidavit was from appellant Ruth Campbell.

{¶13} Appellee's summary judgment motion argued that this court has consistently held that the MTA and the DMA both apply to oil and gas interests. With regard to her MTA claim, appellee argued that her root of title was her August 4, 1966 quit-claim deed and that deed only contained a general reference to the Miller reservation without any specific identification of a recorded title transaction. She also argued that between August 4, 1966 and April 19, 2010, the Miller reservation was not subject to any MTA exceptions. With regard to her DMA claim, appellee argued that for the 20 years prior to her initiating the abandonment procedure, the Miller reservation was not subject to a title transaction and no savings event occurred to prevent it from being declared abandoned.

{¶14} Along with her motion for summary judgment, appellee attached her responses to appellants' discovery requests. Relevant to this appeal, appellants' seventh interrogatory asked appellee to describe the efforts she used to locate, identify, and/or serve John D. Miller, Sarah Emma Miller, William Miller, George Miller, Nancy Ruth Trigg, John M. Miller, Donald Miller, or their heirs or assigns with the notice of abandonment by U.S. certified mail. Appellee responded, in relevant part:

> [T]itle was run and an abstract related to the same was produced. Additionally, Kevin Presley and Shirley Neiswong researched the heirs via running the heirs' names on the Monroe County Auditor, Recorder, Clerk of Courts, and Probate records, as well as utilizing the funeral home records and other records in possession of the Monroe County Historical Society and Genealogical Society.

(Appellee's Motion for Summary Judgment Ex. 1.)

{¶15} On September 24, 2019, the trial court denied appellants' motion for summary judgment and granted appellee's motion for summary judgment. The trial court held that appellants' interest in the Miller reservation was extinguished under the MTA because the reference to the Miller reservation in appellee's root of title was general and did not contain any specific identification of a recorded title transaction. The trial court

also held that appellants' interest in the Miller reservation was abandoned under the DMA because no savings event had occurred, the Miller reservation was not subject to a title transaction between October 3, 1993 and November 22, 2013, and appellants did not file a claim to preserve their interests in the Miller reservation after appellee filed her notice of abandonment.

{¶16} Appellants timely filed their notice of appeal on October 21, 2019. They now raise two assignments of error.

{¶17} Both assignments of error challenge the trial court's summary judgment ruling. Thus, we shall apply the same standard of review to both assignments of error.

{¶18} An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶19} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶20} If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

{¶21} Because appellants' second assignment of error is dispositive, we will address it first. Appellants' second assignment of error states:

THE TRIAL COURT ERRED IN DETERMINING THE SEVERED OIL
AND GAS MINERAL INTEREST IS EXTINGUISHED BY OPERATION OF
THE OHIO MARKETABLE TITLE ACT.

**{¶22}** Appellants make two arguments in this assignment of error. First, they argue that the DMA and the MTA are in conflict and the DMA, as the specific statute, controls over the MTA. Alternatively, appellants argue that the trial court's judgment regarding appellee's MTA claim was erroneous because their interest was subject to multiple title transactions during the requisite 40-year lookback period.

**{¶23}** The Ohio Supreme Court recently resolved appellants' argument that the DMA and the MTA are in conflict. In *West v. Bode,* Slip Opinion 2020-Ohio-5473, the appellants argued that the MTA does not apply to severed interests in oil and gas, because the more specific DMA supersedes it. The Ohio Supreme Court disagreed. The Court held there is no irreconcilable conflict between the general provisions of the MTA as applied to severed mineral interests and the DMA. *Id.* at ¶ 44. Therefore, both acts remain in effect. *Id.* The Court went on to point out that the MTA and the DMA "afford independent procedures, either of which may be used to effect the termination of a severed mineral interest, depending on the circumstances of the case and the time that has elapsed." *Id.* The Court reasoned:

> [T]he Marketable Title Act and the Dormant Mineral Act operate differently and after different periods of time. The Marketable Title Act extinguishes property interests after 40 years without a saving event, measured from the effective date of the surface owner's root of title; the Dormant Mineral Act provides a mechanism that a surface owner may use to have a severed mineral interest deemed abandoned and vested in the surface owner after a shorter, 20-year period.

*Id.* at ¶ 28.

**{¶24}** Thus, the DMA does not control over the MTA. Either or both statutes can be applied to a severed mineral interest.

Case No. 19 MO 0022

{¶25} Turning to appellants' MTA argument, pursuant to R.C. 5301.48, if a person has an unbroken chain of title of record to any interest in land for 40 or more years, the person has marketable record title as defined in R.C. 5301.47, subject to the exceptions listed in R.C. 5301.49. The statute further states: "A person has such an unbroken chain of title when the official public records disclose a conveyance or other title transaction, of record not less than forty years at the time the marketability is to be determined, which said conveyance or other title transaction purports to create such interest" in the person or one of his predecessors in title "with nothing appearing of record to divest" him of the purported interest. R.C. 5301.48.

{¶26} A marketable record title "operates to extinguish" all interests existing prior to the root of title. R.C. 5301.47(A), citing R.C. 5301.50. The root of title is the "conveyance or other title transaction in the chain of title of a person, purporting to create the interest claimed by such person, upon which he relies as a basis for the marketability of his title, and which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). Pursuant to R.C. 5301.50, subject to R.C 5301.49, the record marketable title shall be held free and clear of all interests which depend upon events occurring prior to the effective date of the root of title.

{¶27} Record marketable title is subject to certain exceptions listed in R.C. 5301.49. Appellants argue that their interest in the Miller reservation was preserved by operation of R.C. 5301.49(D). Pursuant to this exception, record marketable title is subject to:

> Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code[.]

R.C. 5301.49(D).

**{¶28}** It is undisputed that appellee's root of title is the August 4, 1966 quit-claim deed from W.M. and Mary Stephens to appellee and her husband conveying the surface of the property.

**{¶29}** Appellants argue that their interest in the Miller reservation has been the subject of three probate filings during the 40-year look-back period, which preserved their interest pursuant to R.C. 5301.49(D). The three probate filings are: (1) the estate of Donald F. Miller recorded on July 5, 1989; (2) the estate of June Ann Miller recorded on December 21, 1999; and (3) the death of Nancy Ruth Trigg on June 17, 1986. "[A] probate court judgment would satisfy the recording element of R.C. 5301.49(D)." *Pollock v. Mooney*, 7th Dist. Monroe No. 13 MO 9, 2014-Ohio-4435, ¶ 26.

**{¶30}** The record does not contain any filings related to the estate of Nancy Ruth Trigg. As there is nothing in the record related to the estate of Nancy Ruth Trigg, this event did not preserve appellants' interest in the Miller reservation pursuant to R.C. 5301.49(D).

**{¶31}** Atty. Bickford's affidavit contains probate filings from the Belmont County Probate Court related to Donald F. Miller's estate. (Bickford Aff. Ex. F). Donald F. Miller was one of John D. Miller's heirs. The application to probate Donald F. Miller's will was filed on April 7, 1989. In his will, Donald F. Miller left all property, real and personal, to his wife June Ann Miller.

**{¶32}** Atty. Bickford's affidavit also contains probate filings in the Belmont County Probate Court related to June Ann Miller's estate. (Bickford Aff. Ex. G). The application to probate June Ann Miller's will was filed on December 21, 1999. In her will, June Ann Miller left all of her property, real and personal, to her sons, John D. Miller and Donald D. Miller.

**{¶33}** Appellee argues that these probate filings are insufficient to preserve appellants' interest in the Miller reservation because they occurred in Belmont County, not in Monroe County where the property is located. Appellee points out that there is no evidence these probate filings were recorded in Monroe County.

**{¶34}** Appellee is correct that there is no evidence that any document related to the estate of Donald F. Miller or June Ann Miller was recorded in Monroe County.

{¶35}   The MTA is meant to facilitate and simplify land-title transactions by permitting a person to rely on the record chain of title.  R.C. 5301.55.  The purpose of the MTA is "to extinguish interests and claims in land that existed prior to the root of title with 'the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title.'"  *Corban v. Chesapeake Expl., L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 17, quoting R.C. 5301.55.  Courts are to liberally construe the statutes at R.C. 5301.47 through R.C. 5301.56 to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title.  *West v. Bode*, 7th Dist. No. 18 MO 0017, 2019-Ohio-4092, 145 N.E.3d 1190, ¶ 30, *appeal allowed*, 157 Ohio St.3d 1535, 2020-Ohio-122, 137 N.E.3d 1196, and *aff'd,* 2020-Ohio-5473.

{¶36}   This court has touched on the subject of whether a probate filing has to occur in the county in which the land is situated in order to constitute a "title transaction" under R.C. 5301.49(D)'s marketable title exception in *Warner v. Palmer*, 7th Dist. Belmont No. 18 BE 0012, 2019-Ohio-4078, appeal not allowed, 158 Ohio St.3d 1422, 2020-Ohio-647, 140 N.E.3d 740, reconsideration denied, 158 Ohio St.3d 1507, 2020-Ohio-2819, 144 N.E.3d 447.  In *Warner*, the appellees argued that their interest was preserved under R.C. 5301.49(D)'s exception due, in part, to the filing of an ancillary estate in Belmont County, the county in which the subject property was located.  The probate estate of one of the original reservationists was administered in Dallas County, Texas with an ancillary estate administration in Belmont County, Ohio.  *Id.* at ¶ 23.  We found that the will administered in Texas, with an ancillary administration in Belmont County where the subject property was located, constituted a title transaction that saved the appellees' interest under the MTA.  *Id.* at ¶¶ 24-25.

{¶37}   The Fifth District subsequently relied on our *Warner* decision in reaching its decision in *Peppertree Farms, LLC v. Thonen*, 5th Dist. Stark No. 2019CA00159, 2020-Ohio-3042, ¶ 51, appeal allowed sub nom. *Peppertree Farms, L.L.C. v. Thonen*, 160 Ohio St.3d 1407, 2020-Ohio-4574, 153 N.E.3d 104, reconsideration granted, 160 Ohio St.3d 1462, 2020-Ohio-5332, 157 N.E.3d 798.  In that case, the appellants argued that a will filed in West Virginia, among other items, constituted a title transaction to trigger

R.C. 5301.49(D)'s exception. *Id.* at ¶ 51. In addressing the will filed in West Virginia, the Fifth District explained:

> A title transaction is defined as "any transaction affecting title to any interest in land, including title by will or descent, title by tax deed, or by trustee's, assignee's, guardian's, executor's, administrator's, or sheriff's deed, or decree of any court, as well as warranty deed, quit claim deed or mortgage." R.C. 5301.47(F). "Record" is defined as including "probate and other official public records, as well as records in the office of the recorder of the county in which all or part of the land is situated." R.C. 5301.47(B). "Recording" when applied to the official public records of the probate or other court, includes filing. R.C. 5301.47(C).
>
> We agree with appellees that the wills of Rose Neuhard and Dixie Neuhard do not constitute exceptions to the MTA pursuant to R.C. 5301.49(D). * * * [U]nlike the case cited by appellants in support of their argument in which there was an ancillary administration of the testator's estate in Belmont County, the county in which all or part of the land was situated pursuant to R.C. 5301.47(B), the will of Rose Neuhard was not recorded, filed, or administered partially or fully in Ohio, but was filed and administered fully in West Virginia. See *Warner v. Palmer*, 7th Dist. Belmont No. 18 BE 0012, 2019-Ohio-4078, 2019 WL 4894089.

*Id.* at ¶¶54-55.

{¶38} Interpreting the legislative purpose of the MTA, the statutes, and the case law together, it becomes clear that a title transaction must be recorded in the county where the real property is located in order for the R.C. 5301.49(D) exception to apply. Such an interpretation is also practical because someone conducting a search for the record chain of title for a particular property in a particular county would not be put on notice that there may have been a will filed in probate court in another county, or even another state, that could affect title to the subject property. Without notice in the county in which the property is located, a title examiner would struggle with where to search for possible title transactions affecting the record chain of title. A probate certificate of

transfer or an ancillary estate recorded in the county in which the property is located, for example, would put a title examiner on notice that there may be a title transaction in another county or another state that could affect the record chain of title. Because the estate of Donald F. Miller and the estate of June Ann Miller were both recorded in Belmont County, and nothing filed in Monroe County where the property is located, the R.C. 5301.49(D) exception does not apply here.

{¶39} Appellants also argue that their interest in the Miller reservation was the subject of two memorandums of lease, one between appellant Ruth Trigg Campbell and Gulfport Energy Corporation and the other between appellant John Darby Miller and Gulfport Energy Corporation. Both memorandums were recorded on May 17, 2017. Appellants assert these memorandums operated as title transactions. Oil and gas leases can be considered "title transactions" pursuant to R.C. 5301.47(F) because they affect title to real property. *Eisenbarth v. Reusser*, 7th Dist. Monroe No. 13 MO 10, 2014-Ohio-3792, ¶ 32; *see also Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 50-51, 58-66.

{¶40} But these oil and gas leases do not satisfy the R.C. 5301.49(D) exception. Appellee's root of title is the 1966 deed. These two oil and gas leases were recorded in 2017, approximately 51 years after appellee's root of title. Thus, these oil and gas leases were filed after the 40-year look-back period of R.C. 530.148.

{¶41} Thus, no title transactions occurred during the relevant 40-year time period that would trigger the R.C. 5301.49(D) exception. The trial court properly found that appellants' interest in the Miller reservation was extinguished by operation of the MTA.

{¶42} Accordingly, appellants' second assignment of error is without merit and is overruled.

{¶43} Appellants' first assignment of error states:

THE TRIAL COURT ERRED IN DETERMINING THE SEVERED OIL AND GAS MINERAL INTEREST IS ABANDONED BY OPERATION OF THE 2006 OHIO DORMANT MINERAL ACT.

{¶44} Appellants argue that their interest in the Miller reservation was not abandoned under the DMA because appellee did not follow the proper procedure for

providing notice to outstanding interest holders. Specifically, appellants argue that the necessary information to discover their interest in the Miller reservation would have been found had appellee searched Belmont County records.

**{¶45}** The DMA provides that "[a]ny mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied" and no savings events occur. R.C. 5301.56(B).

**{¶46}** Appellants only challenge appellee's compliance with the notice provision. The DMA's notice provision provides that prior to a surface owner deeming an outstanding mineral interest abandoned, the surface owner shall:

> Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located.

R.C. 5301.56(E)(1).

**{¶47}** It is undisputed that appellee did not attempt to serve notice of her intent to declare the Miller reservation abandoned to appellants by certified mail. Instead, appellee published her notice in the Monroe County Beacon, which is a newspaper of general circulation in the county in which the property is located.

**{¶48}** This court has held that if a surface owner engages in reasonable due diligence to locate interest holders but cannot locate any interest holders, serving the notice by certified mail is not necessary. *Shilts v. Beardmore*, 7th Dist. Monroe No. 16 MO 0003, 2018-Ohio-863, ¶ 15, appeal not allowed, 153 Ohio St.3d 1433, 2018-Ohio-2639, 101 N.E.3d 464. Thus, if appellee engaged in reasonable due diligence and was not able to locate any interest holders, she would not be required to serve her notice by certified mail.

Case No. 19 MO 0022

**{¶49}** Several questions arise as to whether appellee could have located any of appellants' addresses in the exercise of reasonable due diligence, which would have required her to then serve her notice of abandonment by certified mail instead of by publication. For instance, there was a certificate of transfer from the Estate of John D. Miller dated August 14, 1940, indicating that the Estate of John D. Miller transferred his interest in the Miller reservation to Sara Emma Miller, William Miller, George Miller, Nancy Ruth Trigg, John M. Miller, and Donald Miller (appellants' predecessors in interest). The certificate of transfer lists John D. Miller as a resident of Shadyside, Ohio. Shadyside is located in Belmont County. Additionally, appellee was able to serve appellant Marilyn Miller Whyte by certified mail with notice of this action. But how appellee discovered Marilyn Miller Whyte's address is not part of the record.

**{¶50}** Nonetheless, we need not determine whether appellant exercised reasonable due diligence to locate the interest holders. We already found that appellants' mineral interest was extinguished under the MTA. Thus, their DMA argument is now moot. Accordingly, appellants' first assignment of error is moot.

**{¶51}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., dissents with dissenting opinion.
Robb, J., concurs.

Waite, J., dissenting.

**{¶52}** I must respectfully dissent from the conclusion that the majority has reached in this case. Based on statutory construction of the MTA, I disagree that R.C. 5301.47(B) requires a title transaction involving "probate and other official public records" to be recorded in the county where the property is located.

**{¶53}** Pursuant to R.C. 5301.47(B), a record "includes probate and other official public records, as well as records in the office of the recorder of the county in which all or part of the land is situate." While the majority is correct that records kept by the recorder's officer must be filed or recorded in the county where the property is located, this phrase is separated from the preceding clause that pertains to probate and other public records by a comma.

**{¶54}** "A court 'must read words and phrases in context and construe them in accordance with rules of grammar and common usage.' " *Steiner v. Morrison*, 7th Dist. Mahoning No. 14 MA 0114, 2016-Ohio-4798, 68 N.E.3d 151, ¶ 22, citing *W. Jefferson v. Cammelleri*, 12th Dist. Madison No. CA2014-04-012, 2015-Ohio-2463, ¶ 14; *State ex rel. Choices for S.W. City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40. "According to ordinary grammar rules, items in a series are normally separated by commas." *Steiner* at ¶ 22, citing *W. Jefferson* at ¶ 15; Chicago Manual of Style 312 (16th Ed.2010). When phrases are separated by a comma, the words within the commas refer to only one idea. *Id.*

**{¶55}** The first definitional phrase in R.C. 5301.47(B), "probate and other public records," does not include language requiring these records to be filed or recorded in the county where the property is located. However, the second definitional phrase, "as well as records in the office of the recorder of the county in which all or part of the land is situate," does require records to be located in the county. Reading these phrases as separate requirements, as we must, there is nothing within the language of the statute that requires "probate and other public records" to be filed or recorded in the county where the property is situated. In order to read the statute as the majority does, the comma in that sentence should be placed after the word "recorder." The language would read, instead, that a record "includes probate and other official records, as well as records in the office of the recorder, of the county in which all or part of the land is situate." This is

Case No. 19 MO 0022

not how the statute was drafted and the statute as written cannot be interpreted as though it was.

{¶56} If the legislature had intended the interpretation given by the majority, the legislature could have drafted it accordingly.

{¶57} The preservation mechanism of the MTA differs from language found in the DMA in this regard. The MTA preserves:

> Any interest arising out of a title transaction which has been recorded subsequent to the effective date of the root of title from which the unbroken chain of title or record is started; provided that such recording shall not revive or give validity to any interest which has been extinguished prior to the time of the recording by the operation of section 5301.50 of the Revised Code

R.C. 5301.49(D).

{¶58} Had the MTA been intended to require probate and other public records to be filed or recorded in the county where the property is located, the legislature would have used language similar to that found within the DMA, R.C. 5301.56. Pursuant to R.C. 5301.56(B)(3)(a), an interest is preserved if "[t]he mineral interest has been the *subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located.*" (Emphasis added.) Here, the entire phrase clearly indicates that any title transaction, in order to operate to preserve an interest, must be filed or recorded within the county where the property is located.

{¶59} Consequently, I disagree with the majority and would reverse the trial court's determination that Appellant's interest was extinguished by the MTA. Then, I would proceed to analyze Appellant's first assignment of error to determine if the interest was abandoned pursuant to the DMA.

Case No. 19 MO 0022

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**