THE STATE EX REL. ESSIG ET AL. *v.* BLACKWELL, SECY. OF STATE.

[Cite as *State ex rel. Essig v. Blackwell,*
103 Ohio St.3d 481, 2004-Ohio-5586.]

(No. 2004–1603—Submitted October 18, 2004—Decided October 21, 2004.)

**Per Curiam.**

{¶ 1} In this case, we must determine relators' entitlement to writs of mandamus and prohibition to prevent the Secretary of State from placing a proposed constitutional amendment on Ohio's November 2, 2004 election ballot. Because we lack jurisdiction over relators' mandamus claim and because Section 1g, Article II of the Ohio Constitution and res judicata bar relators' prohibition action, we dismiss the mandamus claim and deny the prohibition claim.

{¶ 2} Initiative petitioners, Reverend K. Z. Smith, Lori A. Viars, and Phil Burress, are members of a committee named the Ohio Campaign to Protect Marriage. They proposed by initiative petition that the Ohio Constitution be amended by adding the following section to Article XV:

{¶ 3} "Section 11. Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage."

{¶ 4} On April 20, 2004, the petitioners submitted the proposed constitutional amendment and a summary of the proposed amendment to the Attorney General of Ohio for certification in accordance with R.C. 3519.01(A). The summary provided:

{¶ 5} "The amendment denies the validity and prohibits the legal recognition as marriage in Ohio of same-sex relationships and relationships comprised of three or more persons, and forbids according non-marital relationships a legal status intended to approximate marriage in certain respects."

{¶ 6} On April 28, 2004, the Attorney General certified the summary as fair and accurate. On May 28, 2004, in *State ex rel. Rankin v. Petro,* Franklin C.P. No. 04CVH05–4888, Judge Daniel T. Hogan of the Franklin County Court of Common Pleas declared that the summary was not a fair and truthful summary of the proposed constitutional amendment.

{¶ 7} By May 21, 2004, before Judge Hogan's decision, petitioners were circulating part-petitions for the proposed constitutional amendment without any summary or Attorney General certification contained in the part-petitions. The initiative petition contained the title—"Marriage Protection Amendment"—and the text of the proposed constitutional amendment but did not contain the

summary and certification of the Attorney General as required by R.C. 3519.01 and 3519.05.

{¶ 8} On August 3, 2004, petitioners submitted their initiative petition to respondent, J. Kenneth Blackwell, the Secretary of State of Ohio. On August 9, 2004, the Secretary of State began distributing part-petitions to the appropriate boards of elections with instructions for examining them. The Secretary of State ordered the boards of elections to report their findings by August 27. Between August 24 and September 21, 2004, relators, Melanie J. Essig and Sandra Essig, residents and registered electors of Ohio, filed protests in 42 counties challenging the validity of the initiative petition. See R.C. 3519.16. Relators included as a claim in each of their protests that the August 3 initiative petition was invalid because it did not have the required summary and Attorney General certification. Over 20 common pleas courts rendered varying decisions on the protests.

{¶ 9} On September 15, 2004, relators Melanie J. Essig and Bruce G. Kriete, another Ohio resident and registered elector, filed a petition in the Court of Appeals for Franklin County for writs of mandamus and prohibition. They alleged that the initiative petition submitted to the Secretary of State and the boards of elections on August 3, 2004, was invalid because it lacked the required summary and Attorney General certification. On September 20, 2004, following a hearing, the court of appeals refused to issue the writs. In a short entry, the court of appeals held that "relators have failed to demonstrate their right to either a writ of mandamus or a writ of prohibition under the particular facts of this case." *State ex rel. Essig v. Blackwell* (Sept. 20, 2004), Franklin App. No. 04AP–939.

{¶ 10} On September 17, 2004, the Secretary of State notified petitioners that the initiative petition contained 280,578 valid signatures, which was 42,321 signatures short of the constitutional requirement of ten percent of electors for placement of the initiative on the ballot. Section 1a, Article II, Ohio Constitution. Pursuant to Section 1g, Article II of the Ohio Constitution and R.C. 3519.16, the Secretary of State informed the petitioners that they had ten additional days to file more signatures.

{¶ 11} On that same date, petitioners submitted a supplemental initiative petition containing additional signatures to the Secretary of State. Like the previously filed petition, the supplemental initiative petition contained no summary or certification by the Attorney General.

{¶ 12} On September 20, 2004, relators submitted a written protest with the Secretary of State under R.C. 3501.39, demanding that he reject the supplemental initiative petition. Relators claimed that the petition did not "contain a summary of the proposed amendment, nor a certification of a summary by the Ohio Attorney General as required by R.C. 3519.01 and 3519.05." On September

22, a hearing officer from the Secretary of State's office conducted a hearing on relators' protest at which the parties introduced exhibits and stipulated facts and presented oral argument. On September 23, 2004, the Secretary of State adopted the hearing officer's recommendation and denied relators' protest. On September 29, 2004, the Secretary of State certified that the original and supplementary petitions contained a sufficient number of valid signatures for the proposed amendment to be placed on the November 2, 2004 election ballot.

{¶ 13} On September 24, 2004, relators filed this expedited election case against the Secretary of State. Relators request a writ of mandamus ordering the Secretary of State to declare the supplemental initiative petition legally insufficient because the petition did not set forth the summary and Attorney General certification required by R.C. 3519.01 and 3519.05. Relators also request a writ of prohibition to prevent the Secretary of State from determining that the supplemental initiative petition met the statutory requirements for sufficiency or submitting the proposed amendment to electors. On October 1, 2004, we granted petitioners' motion to intervene as additional respondents. On October 4, the Secretary of State filed an answer and the petitioners filed an amended answer. Relators moved for leave to amend their complaint, and the parties filed evidence and briefs in accordance with the expedited schedule set forth in S.Ct.Prac.R. X(9). On October 18, 2004, the Secretary of State filed a memorandum in opposition to the motion for leave to amend.

{¶ 14} This cause is now before the court for a consideration of relators' motion for leave to file an amended complaint and on the merits.

## Motion for Leave to File Amended Complaint

{¶ 15} Relators move for leave to file an amended complaint to allege that on September 29 (i.e., five days after the original complaint was filed) the Secretary of State certified that the petition, as supplemented, contained a sufficient number of valid signatures for the proposed constitutional amendment to be placed on the November 2 election ballot.

{¶ 16} "Under S.Ct.Prac.R. X(2), original actions other than habeas corpus filed in the court 'shall proceed under the Ohio Rules of Civil Procedure, unless clearly inapplicable.'" *Tatman v. Fairfield Cty. Bd. of Elections,* 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 7. We have applied Civ.R. 15 in expedited election cases on motions to amend complaints. *Campaign to Elect Larry Carver Sheriff v. Campaign to Elect Anthony Stankiewicz Sheriff,* 101 Ohio St.3d 256, 2004-Ohio-812, 804 N.E.2d 419, ¶ 6.

{¶ 17} We grant relators' motion. "Leave of court shall be freely given when justice so requires." Civ.R. 15(A). And Civ.R. 15(E) permits parties, upon motion and upon reasonable notice and upon such terms as are just, to "serve a

supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." In addition, "in determining actions involving extraordinary writs, a court is not limited to considering the facts and circumstances at the time that the writ was requested but can consider the facts and conditions at the time that entitlement to the writ is considered." *State ex rel. Howard v. Skow*, 102 Ohio St.3d 423, 2004-Ohio-3652, 811 N.E.2d 1128, ¶ 9.

{¶ 18} Therefore, because relators seek to amend their complaint to plead an event that occurred after the original complaint was filed and the amended complaint will not extend the time for briefing and evidence in this expedited election case, we grant the motion and treat their complaint as amended instanter.

## Relators' Claims

{¶ 19} At issue in this expedited election case is relators' entitlement to writs of mandamus and prohibition to prevent the Secretary of State from placing the proposed constitutional amendment on Ohio's November 2, 2004 election ballot. This case is not about the merits of the proposed constitutional amendment but whether the petitioners complied with all applicable election laws so as to warrant the submission of the proposed amendment to the electorate.

## Mandamus

{¶ 20} Relators seek a writ of mandamus to compel the Secretary of State to declare the supplemental petition legally insufficient. Although relators couch their request for extraordinary relief in mandamus in terms of *compelling* certain actions, it is manifest that they actually seek a prohibitory injunction. For example, in relators' memorandum in support of their complaint, they assert that "a writ of mandamus should issue *barring* [the Secretary of State] from accepting these non-compliant supplemental petitions and placing the initiative on the ballot." (Emphasis added.)

{¶ 21} " 'In general, if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction.' " *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 537, 757 N.E.2d 319, quoting *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704.

{¶ 22} Therefore, because the true objective of relators' mandamus claim is to prevent the Secretary of State from determining that the supplemental petition is sufficient and placing the proposed constitutional amendment on the November 2, 2004 election ballot, we lack jurisdiction over the mandamus claim and must dismiss it. *Phillips*, 93 Ohio St.3d at 537, 757 N.E.2d 319; *State ex rel.*

*Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 70–71, 647 N.E.2d 769; see, also, *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 290–291, 649 N.E.2d 1205 (mandamus will not lie to enjoin a board of elections from placing an issue on election ballot when the board has conducted a quasi-judicial hearing pursuant to R.C. 3501.39 on protest against initiative petition).

### Prohibition: Section 1g, Article II, Ohio Constitution

{¶ 23} In the alternative, relators request a writ of prohibition to prevent the Secretary of State from finding the supplemental petition sufficient and submitting the proposed constitutional amendment to the electorate. Respondents assert that relators' claim is barred by Section 1g, Article II of the Ohio Constitution, res judicata, and laches.

{¶ 24} Section 1g provides that for statewide initiative, supplementary, or referendum petitions, including initiative petitions for a proposed constitutional amendment, the "petition and signatures upon such petitions shall be presumed to be in all respects sufficient, unless not later than forty days before the election, it shall be otherwise proved and in such event ten additional days shall be allowed for the filing of additional signatures to such petition."

{¶ 25} "By the terms of Section 1g, Article II of the Ohio Constitution, any claim as to a legal deficiency in the initiative petition, including any claim that the 'summary' contained therein is in conflict with the text, must be made more than 40 days before the election at which such proposal is to be voted on by the electorate." *State ex rel. Schwartz v. Brown* (1972), 32 Ohio St.2d 4, 61 O.O.2d 151, 288 N.E.2d 821, paragraph three of the syllabus. Furthermore, "it [is] clear that the 40-day provision is not limited to signatory insufficiency but extends to any defect of the petition of such character as would render it insufficient to require submission to a vote of the electorate as provided by Section 1a, Article II." Id., 32 Ohio St.2d at 10, 61 O.O.2d 151, 288 N.E.2d 821.

{¶ 26} The alleged legal deficiency that relators raise—the absence of a summary and Attorney General certification on the petition—is a defect that had to be proved not later than September 23, 2004, which was 40 days before the November 2, 2004 election. In fact, relator Melanie J. Essig and relators' counsel recognized this when they raised this claim in the court of appeals mandamus and prohibition case by arguing that unless the court of appeals expedited the case, Essig would "not be able to obtain any meaningful review of the current protests and lawsuits before September 23, 2004—the deadline established by Art. II, Sec. 1g of the Ohio Constitution after which all signatures and, therefore, part-petitions, are deemed presumptively valid."

{¶ 27} Relators assert that because this action challenges the sufficiency of the supplemental petition rather than the original initiative petition, the 40–day provision in Section 1g does not apply. But the original initiative petition and supplemental petition both lacked the summary and certification. Therefore, once the 40–day deadline was reached, the original initiative petition and supplemental petition were presumptively valid for *this claim*. This is consistent with our observation that supplemental part-petitions are part of the initiative petition. See *Thurn*, 72 Ohio St.3d at 295, 649 N.E.2d 1205.

{¶ 28} Relators contend that application of this 40–day provision to supplemental petitions "could lead to the perverse result of barring challenge to supplemental petitions *before they are ever submitted*." (Emphasis sic.) But adopting relators' contention would permit persons opposing a proposed statewide initiative to *either*—as relators do in this case—raise an issue with regard to a supplemental petition less than 40 days before the election when they have previously raised and lost on the same issue with regard to the original petition *or* fail to object to a petition until within 39 days of the election and then mount an 11th-hour challenge to a supplemental petition for a defect they could have previously raised against the original petition. We will not sanction either of these options. *Castleberry v. Evatt* (1946), 147 Ohio St. 30, 33 O.O. 197, 67 N.E.2d 861, paragraph two of the syllabus ("In the construction of constitutional provisions or legislative enactments unreasonable or absurd consequences should, if possible, be avoided"). Notably, relators are *not* challenging the supplemental petition based on alleged defects that were not also contained in the initial petition.

{¶ 29} Therefore, Section 1g, Article II of the Ohio Constitution bars relators' prohibition claim. *Schwartz*, 32 Ohio St.2d 4, 61 O.O.2d 151, 288 N.E.2d 821, paragraph three of the syllabus; *State ex rel. Friedlander v. Myers* (1934), 128 Ohio St. 568, 569, 1 O.O. 167, 192 N.E. 737.

## Prohibition: Res Judicata

{¶ 30} Moreover, as respondents correctly note, res judicata also bars relators from bringing a successive prohibition action. " 'Res judicata bars the litigation of all claims that either were or might have been litigated in a first lawsuit.' " *State ex rel. Commt. for Referendum of Lorain Ordinance No. 77–01 v. Lorain Cty. Bd. of Elections*, 96 Ohio St.3d 308, 2002-Ohio-4194, 774 N.E.2d 239, ¶ 32, quoting *Hughes v. Calabrese*, 95 Ohio St.3d 334, 2002-Ohio-2217, 767 N.E.2d 725, ¶ 12. Relators or their privies have already litigated their mandamus and prohibition claims in the court of appeals. Consequently, res judicata bars this successive writ action. *State ex rel. Rust v. Lucas Cty. Bd. of Elections*, 100 Ohio St.3d 214, 2003-Ohio-5643, 797 N.E.2d 1254, ¶ 9.

{¶ 31} The mere fact that this case involves the September 17 supplemental petition and the earlier case addressed the August 3 initiative petition does not modify this conclusion. Because the supplemental petition was filed on September 17, relators or their privies could have raised their claims regarding that petition or the Secretary of State's September 17 decision permitting the petitioners to file additional signatures at the September 20 court of appeals hearing but evidently did not. And because the legal issue was the same for both petitions, i.e., whether the lack of a summary and Attorney General certification of the proposed constitutional amendment rendered the petition defective, res judicata bars relators' claims here. See *Brown v. Dayton* (2000), 89 Ohio St.3d 245, 249, 730 N.E.2d 958 ("Whereas the first action sought to prevent a vote on the Ordinance, this action seeks to nullify the Ordinance after it has passed. * * * The exact same facts are at issue. * * * [E]ven though plaintiffs are seeking a different remedy, *res judicata* extinguishes their claim"); see, also, *State ex rel. Stacy v. Batavia Local School Dist. Bd. of Edn.*, 97 Ohio St.3d 269, 2002-Ohio-6322, 779 N.E.2d 216, ¶ 16 ("collateral estoppel prevents parties from relitigating in a subsequent case facts and issues that were fully litigated in a previous case").

{¶ 32} Therefore, even if relators' prohibition claim would otherwise have merit, Section 1g, Article II of the Ohio Constitution and res judicata bar it.

Remaining Issues

{¶ 33} Insofar as the parties raise other issues, e.g., laches and the constitutionality of the summary and Attorney General certification requirements of R.C. 3519.01 and 3519.05 facially and as applied to the proposed constitutional amendment, we need not address them because our holding renders them moot. See *State ex rel. Becker v. Eastlake* (2001), 93 Ohio St.3d 502, 507, 756 N.E.2d 1228 (holding in expedited election case "renders moot the city's remaining defenses, *e.g.*, laches, lack of proper election falsification statement, the unconstitutionality of the proposed charter amendment, etc."); *Barton v. Butler Cty. Bd. of Elections* (1988), 39 Ohio St.3d 291, 292, 530 N.E.2d 871 (in expedited election case, because of court's disposition of case, "we find it unnecessary to decide the other issues raised," including laches).

{¶ 34} Moreover, "[c]ourts decide constitutional issues only when absolutely necessary." *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114. This is in accordance with our general rule that "we will not issue advisory opinions, and this rule applies equally to election cases." *State ex rel. Barletta v. Fersch*, 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 22.

### Conclusion

{¶ 35} Accordingly, we dismiss relators' claim for a writ of mandamus and deny relators' claim for a writ of prohibition to prevent the proposed constitutional amendment from being placed on the November 2, 2004 Ohio election ballot. We lack jurisdiction over relators' mandamus claim, and Section 1g, Article II of the Ohio Constitution and res judicata bar relators' prohibition claim.

*Judgment accordingly.*

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., concurs in part and dissents in part.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 36} I concur in the majority's decision to grant leave to file an amended complaint and to dismiss the claim for a writ of mandamus.

{¶ 37} I dissent from the majority's decision to deny the writ of prohibition based on technical arguments. I would reach the merits. It is a seductively easy slide from the golden fortress of judicial restraint to the desolate valley of judicial indifference. In this case, this court has been seduced into the valley by hypertechnical arguments that cause it to disregard the initiative petition's clear statutory violations.

{¶ 38} Amendments to the Constitution of Ohio ought not to be made lightly. That is why our General Assembly enacted R.C. 3519.01(A), which requires petitions to amend the Constitution to include the proposed constitutional amendment, a summary of the amendment, and a certification of the Attorney General that the summary accurately reflects the proposed amendment. A summary is especially important in this case because the second sentence of the proposed amendment is expansive and susceptible of more than one interpretation.

{¶ 39} The language of R.C. 3519.01(A) and 3519.05 is crystal clear, yet the initiative petitioners did not comply with it. Despite his obligation to follow the law, the Secretary of State also ignored R.C. 3519.01(A) and 3519.05. He certified the original initiative petition and the supplemental initiative petition even though they plainly do not comply with R.C. 3519.01(A) and 3519.05. Whether the Secretary of State's overt political interest in the passage of the proposed amendment influenced his decision is unknowable; the perception of influence is undeniable.

{¶ 40} The majority relies on Section 1g, Article II of the Ohio Constitution and res judicata to fashion an opinion that undermines the relators' diligent and extensive efforts to bring to light a blatant disregard for a statutory mandate.

The res judicata rationale is borderline ridiculous. The court of appeals' decision upon which this court relies states in its entirety, "Upon review of relators' petition for a writ of mandamus and petition for a writ of prohibition, and after consideration of the issues raised at oral argument, this court finds relators have failed to demonstrate their right to either a writ of mandamus or a writ of prohibition under the particular facts of this case." *State ex rel. Essig v. Blackwell* (Sept. 20, 2004), Franklin App. No. 04AP–939. We cannot determine from this opinion the grounds upon which the court of appeals made its determination. Yet this court determines that it cannot decide the issue because it has already been decided. The highest court in this state should provide a better reason to justify overlooking clear statutory violations.

{¶ 41} Turning to the majority's Section 1g, Article II rationale, I am equally unimpressed. As a preliminary matter, the majority opinion never explains how Section 1g was violated; it simply concludes that it was.

{¶ 42} Based on the following facts, it is possible that Section 1g was violated. The 40th day before the election was September 23. The Secretary of State certified the signatures on the original part-petitions on September 17, despite the petitions' obvious noncompliance with R.C. 3519.01(A) and 3519.05. The relators submitted a protest on September 20. Their protest was denied by the Secretary of State, as "not well taken," on September 23; this response is only slightly less informative than the court of appeals' decision. The relators filed the action before us on September 24.

{¶ 43} It is possible to conclude, as the majority apparently does, that the relators did not claim a legal deficiency until September 24. See *State ex rel. Schwartz v. Brown* (1972), 32 Ohio St.2d 4, 61 O.O.2d 151, 288 N.E.2d 821. It is more reasonable to conclude that the relators claimed a legal deficiency on September 20, before the constitutional deadline.

{¶ 44} In determining that the implausible Section 1g violation allows this court to disregard the R.C. 3519.01(A) and 3519.05 violations, the court is essentially giving the Secretary of State a free pass to ignore clear statutes and to use tactics of delay to achieve a result in which he has a blatant political interest. I believe that the better course would be to reach the merits and find that R.C. 3519.01(A) and 3519.05 were violated. The relators have asserted their rights in a timely way at every opportunity. It is regrettable that today this court vindicates the Secretary of State's tactics and thereby denies the relators meaningful review of their claims. Three cheers for judicial indifference.

Schottenstein, Zox & Dunn Co., L.P.A., John P. Gilligan, Daniel M. Anderson and Catherine L. Strauss; Law Offices of Donald J. McTigue and Donald J. McTigue, for relators.

Chester, Willcox & Saxbe, L.L.P., Donald C. Brey and Elizabeth J. Watters, for respondent.

Jones Day, Michael A. Carvin, Matthew A. Kairis and Chad A. Readler; Langdon & Shafer, L.L.C., David R. Langdon and Jeffrey A. Shafer, for intervening respondents.