THE STATE EX REL. BROWN ET AL. *v.* BUTLER COUNTY BOARD OF ELECTIONS.

[Cite as *State ex rel. Brown v. Butler Cty. Bd. of Elections,* 109 Ohio St.3d 63, 2006-Ohio-1292.]

(No. 2006–0418—Submitted March 15, 2006—Decided March 22, 2006.)

**Per Curiam.**

{¶ 1} This is an expedited election case in which relators request a writ of prohibition to prevent a board of elections from submitting a county zoning amendment to the electorate on May 2, 2006.

### Relators

{¶ 2} Relators Evelyn A. Brown, Hazel Brown, Darrell E. Brown, Margy B. Beckner, John W. Brown, and James G. Inman own certain property in Ross Township, Butler County, Ohio. Relator Red Pine Properties, L.L.C. ("Red Pine") has agreed to purchase the property from the owners in order to develop it. Relator Andrew J. Temmel is a member of Red Pine.

### Request for Zoning Amendment and Administrative Proceedings

{¶ 3} On August 8, 2005, Red Pine requested that the property be rezoned from A–1 (agricultural district) and R–2 (single-family-residence district) to R–PUD (residential—planned-unit-development district). On September 13, 2005, the Butler County Planning Commission recommended that Red Pine's request be approved subject to six specified conditions. On October 10, 2005, the Butler County Rural Zoning Commission recommended approval of Red Pine's zoning request subject to 11 stated conditions.

### Resolution No. 05–11–2321

{¶ 4} On November 28, 2005, the Butler County Board of Commissioners approved the recommendation of the zoning commission and passed Resolution No. 05–11–2321, which provides:

{¶ 5} "WHEREAS, by advertisement, a public hearing to amend the Butler County Rural Zoning Resolution was held on November 28, 2005 on the application of Red Pine Properties (case RZC 05–10), to redistrict the following described property in Ross Township from A–1 (Agricultural District) and R–2 (Single Family Residence District) to R–PUD (Residential—Planned Unit Development District):

{¶ 6} "[Property Description]

{¶ 7} " * * *

{¶ 8} "WHEREAS, the Butler County Rural Zoning Commission recommended said map amendment be approved at a public hearing held in conjunction therewith on September 19, 2005; and

{¶ 9} "WHEREAS, the Board of Butler County Commissioners concurs with the findings of the * * * Butler County Rural Zoning Commission that said amendment is an appropriate use of the land.

{¶ 10} "THEREFORE BE IT RESOLVED that the Commission approves the request for case RZC 05–10 based on the aforementioned reasons."

### Referendum Petition

{¶ 11} In December 2005, certain Ross Township electors submitted to the Butler County Board of Commissioners a petition for a referendum on Resolution No. 05–11–2321 pursuant to R.C. 303.12(H). The petitioners requested that the zoning amendment be submitted to township electors at the May 2, 2006 election.

{¶ 12} The petition contained the following summary of the zoning amendment:

{¶ 13} "A proposal to amend the Butler County Rural Zoning Resolution on the application of Red Pine Properties (case RZC 05–10), to redistrict the property described in the attached Resolution No. 05–11–2321 in Ross Township from A–1 (Agricultural District) and R–2 (Single Family Residence District) to R–PUD (Residential—Planned Unit Development District).

{¶ 14} "A legal description of the property is contained in the full text of Resolution No. 05–11–2321 attached hereto."

{¶ 15} As specified in the petition, a copy of the complete text of Resolution No. 05–11–2321 was attached. The petition also included a map showing the affected property. According to the Clerk of the Butler County Board of Commissioners, the map used by the referendum petitioners was attached to Resolution No. 05–11–2321 in the board's records. When the referendum petitioners asked her for a copy of the resolution, she included the map attached to the resolution.

## Protest and Hearing

{¶ 16} On January 10, 2006, Red Pine filed a protest against the petition with respondent, Butler County Board of Elections. Red Pine claimed that the petition was invalid because the summary of the resolution and the map were ambiguous and misleading.

{¶ 17} On February 13, 2006, the board of elections held a hearing on Red Pine's protest. At the hearing, Red Pine's representative testified that the map used by the referendum petitioners had been used in zoning meetings and that the planning commission had produced the map to identify the area. A referendum petitioner testified that although the map was not required, it was included with the petition to help petition signers determine the location of the affected property. The petitioner further testified that he had obtained the map from either the board of elections or some other county office and that Red Pine had put the map on a display board at the zoning meetings. Red Pine's representative also testified that the map provided a basic understanding of where the proposed development is located.

{¶ 18} At the conclusion of the hearing, the board of elections denied Red Pine's protest. The board of elections concluded that the petition satisfied the statutory brief-summary requirement because the summary was "basically identical to the resolution." The board of elections further concluded that the map was not misleading, because "it generally accurately portrays the area of the proposed change." The board thus accepted the petition and placed Resolution No. 05–11–2321 on the May 2, 2006 election ballot.

## Expedited Election Case

{¶ 19} On February 27, 2006, relators filed this expedited election case seeking a writ of prohibition to prevent the board of elections from submitting Resolution No. 05–11–2321 to the Ross Township electors at the May 2, 2006 election. On March 7, 2006, the board of elections submitted an answer. Evidence and briefs were filed pursuant to the accelerated schedule for expedited election matters in S.Ct.Prac.R. X(9).

{¶ 20} This cause is now before the court for a decision on the merits.

## Prohibition

{¶ 21} Relators claim that they are entitled to a writ of prohibition to prevent the board of elections from submitting Resolution No. 05–11–2321 to the township electorate on May 2, 2006. In order to be entitled to the requested writ of prohibition, relators must establish that (1) the board of elections is about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no other adequate

remedy exists in the ordinary course of law. *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 29.

{¶ 22} Relators have established the first and third requirements for the writ. The board of elections exercised quasi-judicial authority by denying Red Pine's protest after conducting a hearing that included sworn testimony. See *Tatman v. Fairfield Cty. Bd. of Elections,* 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 14 ("even if the board already exercised its quasi-judicial power by denying [the] protest, relief in prohibition is still available to prevent the placement of names or issues on a ballot, as long as the election has not yet been held"). In addition, given the closeness of the election date in this expedited election case, relators lack an adequate remedy in the ordinary course of law. See, e.g., *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291–292, 649 N.E.2d 1205; *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 412 N.E.2d 393.

{¶ 23} Therefore, the dispositive issue for relators' prohibition claim is whether the board of elections' act of denying Red Pine's protest and submitting the resolution to the electorate was unauthorized by law. In extraordinary actions contesting a board of elections decision, we must determine whether the board acted fraudulently or corruptly, abused its discretion, or clearly disregarded applicable law. *Choices for South–Western City Schools,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 32. There is no allegation of fraud or corruption here, and thus, relators must establish that the board of elections abused its discretion or clearly disregarded applicable law by denying Red Pine's protest. "An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude." *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 305, 686 N.E.2d 238.

{¶ 24} Relators assert that the board of elections abused its discretion and clearly disregarded applicable law by denying Red Pine's protest, because the referendum petition did not comply with the brief-summary requirement of R.C. 303.12(H) and the map attached to the petition was misleading and inaccurate and contained material omissions.

## R.C. 303.12(H)

### Brief–Summary Requirement

{¶ 25} R.C. 303.12(H) requires that each part of a petition seeking a referendum on a county zoning amendment "shall contain the number and the full and correct title, if any, of the *zoning amendment resolution,* motion, or application, furnishing the name by which the amendment proposal is known *and a brief summary of its contents.*" (Emphasis added.)

{¶ 26} "Where an application for rezoning has been amended during the legislative process, the phrase, 'brief summary of its contents' necessarily refers to the proposal to amend the zoning resolution as adopted by the resolution of the board of county commissioners." *State ex rel. Rife v. Franklin Cty. Bd. of Elections* (1994), 70 Ohio St.3d 632, 634, 640 N.E.2d 522, citing *Olen Corp. v. Franklin Cty. Bd. of Elections* (1988), 43 Ohio App.3d 189, 194, 541 N.E.2d 80; see, also, *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 176, 179, 685 N.E.2d 502, construing the identical R.C. 519.12(H) brief-summary requirement for referenda on township zoning amendments ("The phrase 'brief summary of its contents' refers to the zoning resolution passed by the township trustees"). "The summary [required by R.C. 519.12(H) ] must be accurate and unambiguous; otherwise, the petition is invalid and the subject resolution will not be submitted for vote." *S.I. Dev. & Constr., L.L.C. v. Medina Cty. Bd. of Elections,* 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 17, citing *State ex rel. Hamilton v. Clinton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 556, 559, 621 N.E.2d 391.

{¶ 27} Relators assert that the summary contained in the referendum petition was defective because it did not include the conditions specified by the zoning and planning commissions.

{¶ 28} Relators' assertion lacks merit. As we recently held, "when a referendum petition's summary of a resolution contains substantially the same wording as the resolution itself, * * * the summary complies with the statutory requirement, even when the summary fails to include a statement regarding the meaning of zoning classifications, the purpose of the zoning change, or the uses specified in the development plan approved by the resolution." *State ex rel. McCord v. Delaware Cty. Bd. of Elections,* 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 43. That is, "[i]nclusion of the full text of the amendment * * * generally satisfies the [statutory] 'brief summary' requirement." *O'Beirne,* 80 Ohio St.3d at 180, 685 N.E.2d 502.

{¶ 29} The summary in the referendum petition accurately described Resolution No. 05–11–2321 in the same language used by the board of county commissioners in adopting the resolution. The petitioners also attached the full text of the resolution to their petition. The resolution contained none of the items that relators claim are indispensable to a complete understanding of the zoning amendment. "We will not penalize the township electors' attempt to exercise their right of referendum for summarizing the resolution with substantially the same wording as the resolution itself." *State ex rel. C.V. Perry & Co. v. Licking Cty. Bd. of Elections* (2002), 94 Ohio St.3d 442, 445, 764 N.E.2d 411.

{¶ 30} Relators erroneously rely on *McCord,* 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, to assert that the summary is defective. In *McCord,* we

emphasized that the referendum petition did "not simply summarize [the zoning-amendment resolution] in the same words used in the resolution," but included additional language attempting to summarize the zoning application. Id. at ¶ 44. The additional language was held to be misleading because it suggested that only the uses included in the summary were included in the new resolution. Id. at ¶ 57 ("Citizens could have avoided this deception by either including all of the material proposed uses set forth in the development agreement or excluding all of the uses. Petition signers may have been misled by Citizens' choice of a middle ground, noting only the previous proposed uses and omitting the new proposed uses"). Because the petitioners here did not include any additional, deceptive language in their summary of the zoning-amendment resolution, *McCord* is readily distinguishable. In fact, at the board's protest hearing, relators' counsel admitted that *McCord* was factually distinguishable and that *C.V. Perry*—in which we denied a defective-summary claim because the summary in the referendum petition accurately reflected the language of the resolution—was factually "almost directly on point."

{¶ 31} Other cases that relators cite in support of their claim are similarly distinguishable. Cf., e.g., *O'Beirne*, 80 Ohio St.3d at 180–181, 685 N.E.2d 502 (referendum petition on township zoning-amendment resolution violated brief-summary requirement because summary added misleading language to the petition that was not included in the resolution and summary omitted material information that had been part of the resolution); *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections* (1998), 83 Ohio St.3d 298, 301–302, 699 N.E.2d 916 (referendum petition on township zoning amendment violated brief-summary requirement by adding language that was not contained in the resolution and that was ambiguous and deceptive).

{¶ 32} Based on the foregoing, we hold that the board of elections neither abused its discretion nor disregarded applicable law by determining that the referendum petition complied with the brief-summary requirement of R.C. 303.12(H). The summary adequately informed electors of the precise nature of the zoning change from A–1 and R–2 to R–PUD.

Map

{¶ 33} Relators next claim that the map attached to the referendum petition failed to accurately identify the property at issue, failed to describe the current zoning of certain property, and failed to describe that some of the property is designated as open space. Relators further claim that the map is confusing and misleading and omits material information. They contend that a map they submitted as part of their rezoning request is much more descriptive than the map used by the referendum petitioners.

{¶ 34} As the board of elections noted and the parties acknowledge, unlike R.C. 519.12(H), regarding referenda on township zoning amendments, R.C. 303.12(H)

contains no requirement that "an appropriate map of the area affected by the zoning proposal" accompany a referendum petition challenging a county zoning amendment.

{¶ 35} Therefore, the map is akin to additional material, which will not invalidate the petition unless it is misleading. Cf. *McCord,* 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 63 ("A map accompanying a referendum petition should be considered appropriate or suitable for purposes of R.C. 519.12(H) if it does not mislead the average person about the area affected by the zoning resolution").

{¶ 36} The map used by the referendum petitioners accurately outlines the area affected by the zoning amendment in Resolution No. 05–11–2321. There was testimony at the board's protest hearing that the map was used in zoning meetings by the planning department, the board of elections, and even Red Pine. In addition, a Red Pine representative testified that the map provided a basic understanding of the affected property to township electors. Finally, the map was attached to the resolution in the board of county commissioners' record of that resolution. Under these circumstances, the board of elections did not act in an arbitrary, unconscionable, or unreasonable manner in concluding that the map was not misleading to the average person.

{¶ 37} We need not decide the board's additional contention that laches bars relators' prohibition claim, because our holding renders it moot. See, e.g., *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 33, citing *State ex rel. Becker v. Eastlake* (2001), 93 Ohio St.3d 502, 507, 756 N.E.2d 1228, and *State ex rel. Barton v. Butler Cty. Bd. of Elections* (1988), 39 Ohio St.3d 291, 292, 530 N.E.2d 871.

## Conclusion

{¶ 38} Based on the foregoing, the board of elections acted properly in denying Red Pine's protest and placing Resolution No. 05–11–2321 on the May 2, 2006 election ballot. Our holding is consistent with our duty to liberally construe referendum provisions to permit the exercise of the power. See *S.I. Dev. & Constr.,* 100 Ohio St.3d 272, 2003-Ohio-5791, 798 N.E.2d 587, ¶ 22. Therefore, we deny the writ.[1]

Writ denied.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

1. We deny relators' request for oral argument because they advance no argument in support of their request, and the parties' briefs are sufficient to resolve this case. See, e.g., *Choices for South–Western City Schools,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 56.

70

Aronoff, Rosen & Hunt, Stanley J. Aronoff, Richard A. Paolo, and Kevin L. Swick, for relators.

Robin N. Piper, Butler County Prosecuting Attorney, and Roger S. Gates, Assistant Prosecuting Attorney, for respondent.