THE STATE EX REL. EVANS, APPELLANT, *v.* BLACKWELL,
SECY. OF STATE, ET AL., APPELLEES.

[Cite as *State ex rel. Evans v. Blackwell,*
111 Ohio St.3d 1, 2006-Ohio-4334.]

(No. 2006–0878—Submitted August 8, 2006—Decided August 23, 2006.)

---

**Per Curiam.**

{¶ 1} This is an appeal from a judgment denying writs of prohibition and mandamus. Appellant, Jacob Evans, an Ohio taxpayer and elector, seeks the following: to prevent the Secretary of State of Ohio from exercising quasi-judicial authority by circumventing protest proceedings challenging a statewide initiative petition before these proceedings have been adjudicated in common pleas court and to prevent the Clerks of the Ohio House of Representatives and the Ohio Senate from maintaining the Secretary of State's transmittal of the petition on their journals. Evans also seeks to have that transmittal declared void. We affirm.

Initiative Petition, Verification, Protests, and Transmittal

{¶ 2} Appellees Donald McClure, Susan Jagers, and Tracy Sabetta are members of a committee responsible for a state initiative petition proposing a law called "The Smoke Free Workplace Act." Under the proposed law, smoking and burning tobacco in enclosed areas of public places and in public and private places of employment in Ohio would be generally prohibited. SmokeFreeOhio, a coalition of nonprofit organizations, drafted the proposed law.

{¶ 3} On November 17, 2005, the committee filed the initiative petition with appellee Ohio Secretary of State J. Kenneth Blackwell. The petition contained over 167,000 signatures from all 88 counties. On December 1, 2005, in accordance with R.C. 3519.15, the secretary transmitted part-petitions to the respective boards of elections to determine their validity. The secretary also enclosed Directive 2005–33, which tells the elections boards how to determine the validity of the part-petitions and the signatures contained therein. The boards of

elections reviewed the part-petitions and then submitted their respective reports to the secretary.

{¶ 4} Beginning on December 21, 2005, Evans filed protests challenging the sufficiency of the findings of several boards of elections. As of March 2006, Evans had filed protests in 34 counties, and to facilitate adjudication, the secretary had filed a motion in 31 of the 34 counties to intervene and transfer venue to the Franklin County Court of Common Pleas.

{¶ 5} Between December 23 and the morning of December 28, 2005, the Secretary of State received copies of protests against the state initiative that had been filed in seven of the 34 counties and had also received unverified reports that two other counties had received protests. The secretary determined that even if all of the signatures verified in nine counties were invalid, the valid signatures would still exceed the number required for the secretary to transmit the petition to the General Assembly pursuant to Section 1b, Article II of the Ohio Constitution.

{¶ 6} On December 28, 2005, the secretary notified the committee, as required by R.C. 3519.16, that the petition contained 117,026 valid signatures and that this number was sufficient for the petition to be transmitted to the General Assembly. By letter dated December 28, 2005, the secretary notified appellees Laura Clemens, the Clerk of the Ohio House of Representatives, and David Battocletti, the Clerk of the Ohio Senate, that the petition met the requirements of Sections 1b and 1g, Article II of the Ohio Constitution and transmitted the full text and summary of the proposed law to the clerks for the General Assembly's consideration at its 2006 session.

{¶ 7} On January 3, 2006, the General Assembly convened its second regular session, and the clerks journalized the transmittal by the secretary of the proposed law.

## Court of Appeals Case

{¶ 8} On January 3, 2006, Evans filed a complaint in the Court of Appeals for Franklin County for an emergency writ of prohibition or, in the alternative, for a writ of mandamus against the secretary and the clerks "in an election case." Evans claimed that by not waiting to transmit the proposed law to the General Assembly until receiving reports of the boards of elections after the common pleas court proceedings on Evans's protests, the secretary violated Section 1b, Article II of the Ohio Constitution. Furthermore, Evans alleges that the secretary, pursuant to R.C. 3519.16, usurped the role of the common pleas courts when he declared that the required number of valid signatures was presented.

{¶ 9} Evans requested a writ of prohibition or, in the alternative, a writ of mandamus to (1) "enjoin the Respondent Clerks from maintaining on their

respective journals of the Ohio House of Representatives and the Ohio Senate entries of receipt of transmittal of the Proposed Law from the Secretary, so that such transmittal is treated as never having been received," (2) "correct the Secretary's jurisdictionally unauthorized actions by declaring null and void the Secretary's report to the committee of December 27, 2005 [sic], and his transmittal of the Proposed Law to the General Assembly on December 28, 2005," and (3) "enjoin the [Secretary] from exercising quasi judicial authority in the form of effectively determining the results of pending protest proceedings before they have been adjudicated."

{¶ 10} The court of appeals appointed a magistrate in the case, and the magistrate granted the petition of the committee and members McClure, Jagers, and Sabetta to intervene as respondents. On March 16, 2006, the magistrate issued a decision recommending that the court of appeals deny Evans's request for writs of prohibition and mandamus. The magistrate determined that the secretary was not prohibited from certifying the proposed law to the General Assembly before the R.C. 3519.16 protest procedures had been exhausted and reports following the protest actions had been returned to the secretary. Evans submitted timely objections to the magistrate's decision, and the appellees filed memoranda in opposition to the objections.

{¶ 11} On April 27, 2006, the court of appeals issued a decision overruling Evans's objections and denying the writs, albeit for reasons different from those discussed by the magistrate. The court of appeals held that Evans was not entitled to a writ of prohibition, because neither the secretary nor the clerks were exercising quasi-judicial authority in transmitting the petition to the General Assembly or accepting the transmitted petition. The court of appeals further held that Evans was not entitled to a writ of mandamus, because he did not object to the magistrate's recommended denial of his mandamus claim. On May 3, 2006, Evans appealed.

Proceedings After the May 3, 2006 Appeal

{¶ 12} On May 4, 2006, Judge David E. Cain of the Franklin County Court of Common Pleas issued a decision in a case consolidating protests that Evans had filed in 34 different counties against the statewide smoke-free initiative. Judge Cain sustained Evans's protests and invalidated all part-petitions listing the American Cancer Society as the circulators' employer when the circulators were actually employed by an independent contractor or were self-employed. Judge Cain ordered the parties to submit a complete list of circulators not employed by the American Cancer Society who had falsely listed the society as their employer. On May 25, 2006, Judge Cain issued an entry listing the 27 part-petitions invalidated by his May 4, 2006 decision. On May 31, Judge Cain entered judgment upon his decisions on Evans's protests.

{¶ 13} That judgment has been appealed to the Court of Appeals for Franklin County, which denied Evans's motion to dismiss the appeal for lack of jurisdiction. *In re Protest of Evans,* Franklin App. Nos. 06AP–539, 06AP–540, 06AP–541, 06AP–542, 06AP–543, 06AP–544, 06AP–545, 06AP–546, 06AP–547, and 06AP–548, 2006-Ohio-3453, 2006 WL 1825177.

{¶ 14} In addition, according to Evans, following the Secretary of State's transmittal of the full text and summary of the proposed statewide initiative that was received by the General Assembly on January 3, 2006, the four-month legislative session ended without the General Assembly taking any action on it.

## May 8, 2006 Court of Appeals' Judgment

{¶ 15} On May 8, 2006, the court of appeals entered a judgment reflecting its April 27, 2006 decision and denied the writs of prohibition and mandamus. Evans filed an amended notice of appeal from that judgment. This appeal was fully briefed on July 31, 2006.

{¶ 16} This cause is now before us upon Evans's appeal as of right from the court of appeals' judgment denying the requested extraordinary relief in prohibition and mandamus. S.Ct.Prac.R. II(1)(A).

## Mandamus

{¶ 17} In his complaint, Evans included an alternate claim for a writ of mandamus. Evans does not contest the court of appeals' denial of his mandamus claim in this appeal.

{¶ 18} Moreover, even if Evans did challenge the denial of the writ, he waived any error by failing to object to that portion of the magistrate's decision recommending denial of the writ. See *State ex rel. Schmidt v. School Emp. Retirement Sys.,* 100 Ohio St.3d 317, 2003-Ohio-6086, 798 N.E.2d 1088, ¶ 6.

{¶ 19} Finally, Evans seeks relief in the nature of a declaratory judgment and prohibitory injunction, which both this court and the court of appeals lack jurisdiction to grant on a purported mandamus claim. *State ex rel. Mackey v. Blackwell,* 106 Ohio St.3d 261, 2005-Ohio-4789, 834 N.E.2d 346, ¶ 13, 16. "In general, if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction." *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704.

## Prohibition: Ten–Day Period of Section 1b, Article II

{¶ 20} Evans first alleges that the Secretary of State violated Section 1b, Article II of the Ohio Constitution. The provision states:

{¶ 21} "When at any time, not less than ten days prior to the commencement of any session of the general assembly, there shall have been filed with the secretary of state a petition signed by three per centum of the electors and verified as herein provided, proposing a law, the full text of which shall have been set forth in such petition, the secretary of state shall transmit the same to the general assembly as soon as it convenes."

{¶ 22} Evans claims that because the secretary did not receive the last of the petitions from the board of elections until December 28, 2005, and the secretary did not verify that the petition contained the requisite number of signatures until that date, he could not transmit the petition to the General Assembly for the session beginning January 3, 2006, because that session was "less than ten days" away on December 28.

{¶ 23} Evans did not raise this claim in his complaint or move to amend his complaint to include this claim. Thus, the claim is without merit. *State ex rel. Montgomery Cty. Pub. Defender v. Siroki*, 108 Ohio St.3d 207, 2006-Ohio-662, 842 N.E.2d 508, ¶ 15. The parties stipulated to facts and evidence based upon the claims specified in Evans's complaint, and although Evans raised this issue in his reply briefs in the court of appeals, the secretary specifically objected to Evans's untimely claim.[1] Although the magistrate addressed this claim, the court of appeals ultimately did not specifically address the merits of the claim, and under the foregoing circumstances, the court of appeals did not err in failing to do so. *State ex rel. BSW Dev. Group v. Dayton* (1998), 83 Ohio St.3d 338, 344–345, 699 N.E.2d 1271; see, also, *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 390–391, 715 N.E.2d 179.

{¶ 24} Finally, as the Secretary of State contends, Evans did not establish that the petition contained an insufficient number of signatures on the Section 1b, Article II deadline of "not less than ten days prior to the commencement" of the January 2006 session of the General Assembly. See Section 1b, Article II, Ohio Constitution ("a petition signed by three per centum of the electors and verified as herein provided"), and Section 1g, Article II, Ohio Constitution ("Upon all initiative * * * petitions provided for in any of the sections of this article, it shall be necessary to file from each of one-half of the counties of the state, petitions bearing the signatures of not less than one-half of the designated percentage of the electors of such county"). That is, the Secretary of State did not need to wait

---

1. In his argument in the court of appeals, the Secretary of State asserted: "[The claim] was not made in the Complaint. It was not the subject of the Stipulations or Discovery. It was not mentioned in [Evans's] initial Appellate Brief. Indeed, the first time this issue was ever raised was in [Evans's] Reply Brief—by which time it was too late for any of the [appellees] to either reply to the argument in their merit briefs or to submit additional evidence."

for all of the counties' sufficiency reports to know that the petition contained sufficient verified signatures for transmission to the General Assembly.

{¶ 25} Therefore, Evans is not entitled to the requested writ of prohibition based upon his claim that the Secretary of State did not receive the reports from all of Ohio's county boards of elections before the commencement of the ten-day period preceding the January 2006 session of the General Assembly because he waived its consideration by the court of appeals.

### Prohibition: Secretary of State Need Not Wait for Protest Proceedings to Be Completed Before Transmitting the Petition

{¶ 26} In Evans's primary prohibition claim, he asserts that the court of appeals erred in denying a writ of prohibition because the Secretary of State was required to wait for the completion of the common pleas court protest proceedings before he could transmit the initiative petition to the General Assembly.

{¶ 27} The Secretary of State must transmit a petition to the General Assembly if it is "signed by three per centum of the electors and verified as herein provided." Section 1b, Article II, Ohio Constitution. Section 1g, Article II specifies certain requirements for statewide initiative and referendum petitions and provides that "[t]he petition and signatures upon such petitions shall be presumed to be in all respects sufficient, unless not later than forty days before the election, it shall be otherwise proved and in such event ten additional days shall be allowed for the filing of additional signatures to such petition." Section 1g further specifies that "[l]aws may be passed to facilitate the[ ] operation" of the constitutional provisions, "but in no way limiting or restricting either such provisions or the powers herein reserved."

{¶ 28} R.C. 3519.15 and 3519.16 are laws passed pursuant to that provision to facilitate the operation of Sections 1b and 1g, Article II of the Ohio Constitution. Under R.C. 3519.15, when a statewide initiative or referendum petition is filed with the Secretary of State, "he shall forthwith separate the part-petitions by counties and transmit such part-petitions to the boards of elections in the respective counties." The boards then ascertain whether each part-petition is properly verified and whether the signatures are valid and submit reports to the Secretary of State containing their findings. Id.

{¶ 29} R.C. 3519.16 provides a procedure by which protests may be filed challenging the board's findings under R.C. 3519.15. There is no statutory deadline for filing a protest under R.C. 3519.16 for a statewide initiative or referendum petition. Under R.C. 3519.16, when a protest is filed, the board must "establish the sufficiency or insufficiency of the signatures and of the verification of those signatures in an action" in the county common pleas court. Once the common pleas court makes its decision in the protest action, the board is to

certify an additional report, and with the properly verified petition parts, send it to the "secretary of state not less than fifty days before the election, provided that, in the case of an initiated law to be presented to the general assembly, the boards shall promptly check and return the petitions together with their report." R.C. 3519.16. The Secretary of State shall then "notify the chairperson of the committee in charge of the circulation as to the sufficiency or insufficiency of the petition and the extent of the insufficiency." Id.

{¶ 30} In order to be entitled to the requested writ of prohibition, Evans must establish that (1) the secretary and the clerks are about to exercise quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will result in injury for which no adequate remedy exists in the ordinary course of law. *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 21. "In general, absent a patent and unambiguous lack of jurisdiction, the entity exercising judicial or quasi-judicial authority can be challenged in the ordinary course of law rather than by extraordinary relief in prohibition." *State ex rel. Ministerial Day Care Assn. v. Montgomery*, 100 Ohio St.3d 343, 2003-Ohio-6446, 800 N.E.2d 18, ¶ 4.

{¶ 31} Evans claims that he is entitled to extraordinary relief in prohibition because the secretary patently and unambiguously lacked authority under the constitutional and statutory scheme to transmit the petition to the General Assembly without waiting for the common pleas courts' adjudication of all of the various protest proceedings against the petition and the submission of a second set of reports reflecting those proceedings from the boards of elections to the secretary. According to Evans, by so acting, the secretary usurped the judicial authority of the common pleas courts. In extreme cases, prohibition may lie against even ministerial officers or entities if they are abusing or usurping judicial functions. *State ex rel. Nolan v. ClenDening* (1915), 93 Ohio St. 264, 270, 112 N.E. 1029.

{¶ 32} Evans's claim, however, lacks merit. Section 1b, Article II of the Ohio Constitution does not expressly condition the secretary's duty to transmit the petition to the General Assembly upon receipt of reports after the completion of R.C. 3519.16 protest proceedings. After all, R.C. 3519.16 sets no deadline by which an interested party must file a protest against a statewide initiative or referendum petition. Therefore, making the secretary wait for a second set of verification reports from boards of elections that may never arrive unreasonably fails to advance the constitutional right of initiative. See *State ex rel. Hodges v. Taft* (1992), 64 Ohio St.3d 1, 4, 591 N.E.2d 1186 ("The powers of initiative and referendum should be liberally construed to effectuate the rights reserved"); *State ex rel. Essig v. Blackwell*, 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 28 (courts have a duty to construe constitutional and legislative provisions to

avoid unreasonable or absurd consequences). Indeed, even R.C. 3519.16, when read in pari materia with R.C. 3519.15, does not explicitly command the secretary to await the conclusion of all protest proceedings before transmitting the petition to the General Assembly. *State ex rel. Choices for South–Western City Schools v. Anthony,* 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 46 (statutes relating to the same subject matter must be construed in pari materia and construed to give them full effect).

{¶ 33} The Secretary of State may not, however, transmit the initiative petition to the General Assembly pursuant to Section 1b, Article II of the Ohio Constitution until he has received reports back from the boards of elections in accordance with R.C. 3519.15. *Cappelletti v. Celebrezze* (1979), 58 Ohio St.2d 395, 396, 12 O.O.3d 343, 390 N.E.2d 829. The secretary received these initial reports here.

{¶ 34} The Secretary of State's interpretation of the pertinent constitutional and statutory provisions is not unreasonable. We must therefore defer to the secretary's reasonable interpretation. *Rust v. Lucas Cty. Bd. of Elections,* 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 13 (court's duty is to defer to Secretary of State's interpretation of election law if law is subject to two different, but equally reasonable, interpretations).

{¶ 35} In addition, the secretary determined that even if all of the protests that were pending at the time he transmitted the petition to the General Assembly were meritorious, the petition would still have had sufficient valid signatures to warrant its submission to the General Assembly.

{¶ 36} Under these circumstances, the secretary did not patently and unambiguously lack jurisdiction to transmit the proposed law to the General Assembly, and Evans was relegated to the ordinary course of law to seek an alternate remedy.

{¶ 37} The presence of an adequate remedy in the ordinary course of law precludes the requested extraordinary relief in prohibition. "[P]rohibition will not issue if the relator has an adequate remedy in the ordinary course of law." *State ex rel. Downs v. Panioto,* 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911, ¶ 27. In order for an alternate remedy to be adequate, it must be complete, beneficial, and speedy. *State ex rel. Smith v. Cuyahoga Cty. Court of Common Pleas,* 106 Ohio St.3d 151, 2005-Ohio-4103, 832 N.E.2d 1206, ¶ 19.

{¶ 38} The specific relief requested by Evans in the court of appeals establishes that he has or had an adequate remedy in the ordinary course of law by an action for declaratory judgment and prohibitory injunction in the common pleas court. In effect, Evans requested (1) a prohibitory injunction preventing the Clerks of the Ohio House of Representatives and the Ohio Senate from "maintaining on their respective journals * * * entries of receipt of transmittal" of the proposed law from the Secretary of State, (2) a judgment "declaring null and

void" the secretary's December 28, 2005 transmittal of the proposed law to the General Assembly, and (3) a prohibitory injunction barring the secretary "from exercising quasi judicial authority by determining the results of pending protest proceedings before they have been adjudicated."

{¶ 39} In fact, in one of his briefs in the court of appeals, Evans conceded as much by claiming that "declaratory judgment is not an adequate remedy unless coupled with extraordinary ancillary relief in the nature of a prohibition injunction." Because a mandatory injunction is an extraordinary remedy, it does not constitute an adequate remedy in the ordinary course of law. *State ex rel. Fenske v. McGovern* (1984), 11 Ohio St.3d 129, 11 OBR 426, 464 N.E.2d 525, paragraph one of the syllabus. But Evans admits that his request was for a *prohibitory* injunction, which is an adequate remedy in the *ordinary* course of law. Civ.R. 65; *State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 54–55.

{¶ 40} To be sure, this case is related to the November 2006 general election because—as Evans emphasizes—the Secretary of State's December 28, 2005 transmission of the proposed law to the General Assembly began a four-month period that made placement of the proposed law on that upcoming election ballot a possibility. See Section 1b, Article II, Ohio Constitution ("If [the proposed law] shall not be passed [by the General Assembly], or if it shall be passed in an amended form, or if no action shall be taken thereon within four months from the time it is received by the general assembly, it shall be submitted by the secretary of state to the electors for their approval or rejection at the next regular or general election, if such submission shall be demanded by supplemental petition verified as herein provided and signed by not less than three per centum of the electors in addition to those signing the original petition").

{¶ 41} Because the General Assembly did not adopt the proposed law within this four-month period, under Section 1b, Article II of the Ohio Constitution, if a timely, sufficient supplemental petition is filed, the secretary must submit the Smoke Free Workplace Act to the electorate at the November 2006 election. Evans seeks to prevent this result.

{¶ 42} We have often held in election cases that "given the closeness of the election date * * *, relators lack an adequate remedy in the ordinary course of law" because alternate remedies are not sufficiently speedy. *Brown*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 22. See, generally, *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291–292, 649 N.E.2d 1205; *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 412 N.E.2d 393.

{¶ 43} Nevertheless, when an election is not imminent at the time an action such as this one is filed, prohibition will not lie, because "[a]n action for a prohibitory injunction in common pleas court provides an adequate remedy in the ordinary course of law." *Tatman v. Fairfield Cty. Bd. of Elections*, 102 Ohio St.3d 425, 2004-Ohio-3701, 811 N.E.2d 1130, ¶ 18. Although Evans claims that "a common declaratory judgment action usually takes over a year to judgment," he could have moved for accelerated consideration of the action.

{¶ 44} In *Tatman*, the pertinent election was more than six months away when the relator filed his prohibition action to prevent a person's candidacy for county sheriff at the general election. Id. at ¶ 3. We dismissed the cause because "[a]n action for a prohibitory injunction in common pleas court provides an adequate remedy in the ordinary course of law." Id. at ¶ 18.

{¶ 45} Similarly, when Evans filed his court of appeals action for writs of prohibition and mandamus, a November 2006 election on the proposed law that he sought to prevent was over *11 months* away. He had an adequate legal remedy by an action for a declaratory judgment that the secretary's transmission of the petition to the General Assembly was improper and a prohibitory injunction preventing the General Assembly and the Secretary of State from further acting pursuant to Section 1b, Article II of the Ohio Constitution on the proposed law, including barring its placement on the November 2006 election ballot. Evans did not allege or establish evidence of any present injury that would have prevented an action for declaratory judgment and prohibitory injunction from providing a complete, beneficial, and speedy remedy. See *State ex rel. Earl v. Shafer* (1999), 85 Ohio St.3d 370, 708 N.E.2d 714; see, also, *Freedom Road Found. v. Ohio Dept. of Liquor Control* (1997), 80 Ohio St.3d 202, 204, 685 N.E.2d 522 (declaratory judgment is proper when speedy relief is necessary to preserve rights that may otherwise be impaired or lost).

{¶ 46} Finally, insofar as Evans claims that the harm caused by the Secretary of State in transmitting the petition to the General Assembly is that the legislature "could enact the proposed law into a real law" even though the requisite number of signatures is lacking, Evans concedes that the General Assembly never enacted the law in this case.

{¶ 47} Based on the foregoing, the court of appeals' denial of the writ of prohibition was proper.

## Conclusion

{¶ 48} The court of appeals did not err in denying the writs of prohibition and mandamus. Evans had an adequate remedy by way of an action for declaratory

judgment and prohibitory injunction in the court of common pleas. Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

RESNICK and O'DONNELL, JJ., not participating.

_____

Bricker & Eckler, L.L.P., Quintin F. Lindsmith, Anne Marie Sferra, and Maria J. Armstrong, for appellant.

Chester, Willcox & Saxbe, L.L.P., Donald C. Brey, Elizabeth J. Watters, and Deborah A. Scott, for appellee Secretary of State J. Kenneth Blackwell.

McTigue Law Group, Donald J. McTigue, and Mark A. McGinnis, for appellees Donald McClure, Susan Jagers, Tracy Sabetta, and SmokeFreeOhio.

Jim Petro, Attorney General, Sharon A. Jennings, Senior Deputy Attorney General, and Holly J. Hunt, Assistant Attorney General, for appellees Laura Clemens, Clerk of the Ohio House of Representatives, and David Battocletti, Clerk of the Ohio Senate.